654 F.2d 147
 70 A.L.R.Fed. 847
 ALCOA STEAMSHIP COMPANY, INC., Plaintiff-Appellant,
v.
M/V NORDIC REGENT, Her boilers, tackle, machinery and other
appurtenances in rem, and Norcross Shipping Co.,
Inc., as her Owner, in personam,
Defendants- Appellees.
 No. 1558, Docket 78-7054.
 United States Court of Appeals, Second Circuit.
 Originally Argued April 4, 1978;
Decided Aug. 31, 1978.
Petition for Rehearing Submitted to the Panel Sept. 18, 1978;
Decided Jan. 10, 1979.
Petition for Rehearing En Banc Submitted to the En Banc
Court April 2, 1979;
Decided Feb. 25, 1980.
 
 J. Ward O'Neill, Gordon W. Paulson, Emil A. Kratovil, Jr., and Haight, Gardner, Poor & Havens, New York City, for plaintiff-appellant Alcoa Steamship Company, Inc.
 Hollis M. Walker, Jr., Richard A. Corwin, Vera E. Weinberg, and Walker & Corsa, New York City, for defendants-appellees N/V Nordic Regent and Norcross Shipping Co., Inc.
 Douglas A. Jacobson, Robert S. Burrick, and Bigham, Englar, Jones & Houston, New York City, for American Institute of Marine Underwriters, Amicus Curiae.
 Before KAUFMAN, Chief Judge, FEINBERG, MANSFIELD, MULLIGAN, OAKES, TIMBERS, GURFEIN,* VAN GRAAFEILAND and MESKILL, Circuit Judges.
 
 
 1
 TIMBERS, Circuit Judge (with whom KAUFMAN, Chief Judge, FEINBERG, MANSFIELD, MULLIGAN and MESKILL, Circuit Judges, concur):
 
 
 2
 We have before us for en banc reconsideration an appeal from a judgment entered in the Southern District of New York, William C. Conner, District Judge, 453 F.Supp. 10 (S.D.N.Y.1978), which conditionally dismissed an admiralty action on the ground of forum non conveniens.
 
 
 3
 The essential question presented is what is the proper standard for determining a motion to dismiss an admiralty action on the ground of forum non conveniens when the action has been brought by an American resident libelant in a United States district court and when there is an alternative forum abroad.
 
 
 4
 For the reasons below, we hold that the proper standard is that set forth by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), and recently adhered to by our Court in Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880 (2 Cir.1978). The district court properly applied that standard in the instant case. It held in the exercise of its discretion, after carefully balancing the relevant factors, that conditional dismissal on the ground of forum non conveniens was warranted. Since we hold that the district court applied the proper standard and we find no abuse of discretion on its part, we vacate the judgment and opinion of the panel on rehearing, 654 F.2d 169, and affirm the judgment of the district court.I.
 
 
 5
 The facts relevant to this appeal are simple and straightforward.[1]
 
 
 6
 Shortly before midnight on January 2, 1977, the M/V Nordic Regent ("the vessel") collided with a transfer station ore pier owned by Alcoa Steamship Company, Inc. ("Alcoa") located in Port Tembladora, Trinidad, West Indies, causing, according to Alcoa's claim, an estimated $8,000,000 of damage to its pier. At the time of the collision, the vessel was under charter to Alcoa as an ore carrier. The vessel was owned by the Norcross Shipping Co., Inc. ("Norcross"), a Liberian corporation. Alcoa is a New York corporation engaged in business here and abroad.
 
 
 7
 Alcoa claims that the collision was due chiefly to the failure of the master of the vessel to take on a local pilot before entering the harbor, as required by Trinidad and Tobago statutory law. See Empire Transport, Inc. v. United States, 524 F.2d 1, 5 (2 Cir.1975). Apparently the master was informed by radio that a pilot would meet the vessel at a point about one-half mile from the harbor. The pilot was not there when the vessel arrived. Rather than waiting for the pilot, the master proceeded into the harbor without a pilot and attempted to tie up at the pier on his own. The collision between the vessel and the pier resulted.
 
 
 8
 Alcoa commenced the instant admiralty action in the Southern District of New York to recover the property damage to its pier in Trinidad claimed to have resulted from the alleged negligence of the vessel and its master. Alcoa named as defendants the M/V Nordic Regent and its owner, Norcross. Process was served on Norcross through its general agent in New York. Norcross moved to dismiss the action on the ground of forum non conveniens.
 
 
 9
 The district court took the motion to dismiss on submission, based on the pleadings, affidavits and briefs of the parties--a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York in determining forum non conveniens motions. E.g., Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 531 (1947); Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2 Cir.), cert. denied, 352 U.S. 871 (1956).
 
 
 10
 On January 17, 1978, Judge Conner filed a thoughtful, concise opinion, 453 F.Supp. 10, which set forth in detail the contentions of the respective parties and carefully balanced the factors which should be considered in applying the doctrine of forum non conveniens under Gilbert, supra.[2] This was the crux of the judge's decision:
 
 
 11
 "This Court is persuaded that the lack of a substantial nexus between this controversy and the Southern District of New York combined with the inconvenience and possible prejudice to the defendant resulting from retention of jurisdiction here--which substantially outweigh any inconvenience plaintiff may suffer--renders this an inappropriate forum; an evaluation of the contentions of the parties compels the conclusion that the litigation of this case can be conducted most expeditiously and inexpensively in Trinidad." 453 F.Supp. at 12.
 
 
 12
 Accordingly, defendant's motion to dismiss on the ground of forum non conveniens was granted--but not unconditionally. The judge imposed two important conditions which are best stated in his opinion:
 
 
 13
 "Finally, dismissal will not leave plaintiff without any remedy. Defendant has agreed to submit to the jurisdiction of the courts of Trinidad as a condition of dismissal of this suit; moreover, defendant has already commenced a suit in Trinidad which establishes its presence there for purposes of suit by plaintiff. Defendant has also offered a letter of guaranty that a Trinidadian judgment will be satisfied and agreed that this may be made a condition of the dismissal of this action. ....
 
 
 14
 ... [D]efendant's motion to dismiss is granted, subject to reinstatement in the event that defendant shall fail to submit to jurisdiction in Trinidad with respect to the subject matter of this action and execute the guaranty of satisfaction of judgment described above." Id. at 13.
 
 
 15
 From the judgment entered on Judge Conner's opinion, Alcoa appealed, resulting in the two panel decisions referred to above, note 1, supra, and the instant en banc proceeding which is directed to the second panel decision.
 
 
 16
 With the foregoing brief summary of the facts and prior proceedings in mind, we shall consider in the remainder of this opinion (1) the applicability to admiralty actions of the Supreme Court's Gilbert standard, as reaffirmed by our Court in Farmanfarmaian, for determining motions to dismiss on the ground of forum non conveniens; (2) whether the admiralty nature of the action or the American citizenship of the plaintiff justifies creating a special rule of forum non conveniens; and (3) whether the district court in the instant case, in conditionally dismissing the action on the ground of forum non conveniens, abused its discretion under the Gilbert standard.
 
 II.
 
 17
 We turn first to the applicability to admiralty actions of the Supreme Court's Gilbert standard, as reaffirmed by our Court in Farmanfarmaian, for determining motions to dismiss on the ground of forum non conveniens.
 
 
 18
 (A) GILBERT
 
 
 19
 For more than three decades, Justice Jackson's opinion in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), has been recognized as the leading authority on forum non conveniens. That case involved an action commenced in the Southern District of New York by a Virginia plaintiff against a Pennsylvania corporation to recover damages caused by a fire in a warehouse located in Lynchburg, Virginia. Acknowledging that a court "may resist imposition upon its jurisdiction", 330 U.S at 507,[3] the Supreme Court, in reversing our Court, approved the district court's dismissal of the action on the ground of forum non conveniens. In doing so, the Court set forth the factors to be considered by the trial court, in the exercise of its discretion, in determining whether to grant or deny a motion to dismiss on the ground of forum non conveniens.[4] These are precisely the factors which the district court below evaluated before conditionally granting the instant motion to dismiss. 453 F.Supp. at 11-13.
 
 
 20
 Gilbert recognized that "unless the balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508. The decision also made clear that more than the private convenience interests of the litigants--and much more than the plaintiff's subjective intent--should be considered by the federal courts in acting on forum non conveniens motions. The interests of justice and court efficiency also must be weighed.
 
 
 21
 The standard of Gilbert is thus a twofold one--involving both the court's public interest concerns and the private interests of the parties. As one commentator put it, the Gilbert standard "nicely blends" considerations of harassment by the parties with a balancing of conveniences. Braucher, note 3, supra, at 923.
 
 
 22
 On the same day that Gilbert was decided, Justice Jackson announced the opinion for the Court in another forum non conveniens case. Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518 (1947). In that case, a derivative action commenced in the Eastern District of New York by a New York plaintiff against Illinois defendants, the Supreme Court, in affirming our Court, again approved the district court's dismissal of the action on the ground of forum non conveniens. In doing so, the Court stated:
 
 
 23
 "Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2)make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." 330 U.S. at 524 (emphasis added).
 
 
 24
 Contrary to appellant's argument before us, we do not believe that the Court's decision in Koster establishes a standard other than that of Gilbert for derivative actions, which in turn appellant urges should be expanded for the benefit of American resident libelants in admiralty actions. Justice Jackson's opinion in Koster gives no hint of such a departure from Gilbert. Indeed, the factors weighed by the Koster court are precisely those of the public and private tets--judicial administration and harassment--discussed in Gilbert. The Court in Koster of course recognized that "[t]he complexities and unique features of [derivative] actions, however, are relevant to the forum non conveniens issue...." 330U.S. at 522. This bespeaks not advocacy of a separate test for derivative actions but a pragmatic application of the general equitable principles outlined in Gilbert. In short, we believe that Koster should be read as a consistent, pragmatic application of Gilbert, rather than an exception to it.[5]
 
 
 25
 (B) FARMANFARMAIAN
 
 
 26
 Hardly a year ago, our Court had occasion to consider the matter of forum non conveniens. We concluded that American citizenship alone is not a barrier to dismissal on the ground of forum non conveniens and that Gilbert still provides the controlling standard. Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880 (2 Cir.1978).
 
 
 27
 In Farmanfarmaian, which was decided before the recent change of government in Iran, an Iranian citizen commenced an action in the Southern District of New York for breach of a contract with an Iranian subsidiary of various American and European oil companies. Plaintiff also claimed tortious interference with contract rights. The contract was entered into in Iran. It involved an option to purchase an Iranian company. Evidence relating to the breach, and particularly to the role of the Iranian government, was in Iran. Iranian law was to govern. Although plaintiff was a foreign national, his suit nevertheless presented squarely the question of the district court's power to remit an American plaintiff to a foreign forum. This was so because a bilateral treaty between the United States and Iran granted Farmanfarmaian "access to [this] country's courts on terms no less favorable than those applicable to nationals of the court's country." 588 F.2d at 882, citing 8 United States Treaties and Other International Agreements 900, 902-03 (1957). For the purpose of the forum non conveniens motion, therefore, the courts were obliged to, and did, apply the same forum non conveniens standard as would have been applied if Farmanfarmaian were an American citizen.
 
 
 28
 In an opinion by Judge Feinberg, the Court affirmed the dismissal of the action on the ground of forum non conveniens. It follows, if this recent decision of our Court means anything, that American citizenship is not an impenetrable shield against dismissal on the ground of forum non conveniens.
 
 
 29
 Aside from our concern for the preservation of a uniform standard for determining forum non conveniens motions, Farmanfarmaian demonstrates another policy reason for adhering to a uniform standard, namely, not to run afoul of treaty obligations of the United States. We maintain Treaties of Friendship, Commerce and Navigation, or similar agreements, with dozens of foreign nations. Many include "no less favorable" treatment clauses like the one found in the Iranian treaty addressed in Farmanfarmaian.[6] The approach urged upon us by appellant--requiring a showing of vexation before an action may be dismissed on the ground of forum non conveniens when the plaintiff is an American citizen--would leave the federal courts on the horns of a difficult dilemma if the action involved a plaintiff who is the beneficiary of such a treaty clause. the courts either would be obliged to apply this same vexation standard to foreign nationals who are the beneficiaries of such clauses, thus barring dismissal for all practical purposes and crippling the concept of forum non conveniens, or they would have to do violence to our treaty obligations which of course are paramount under the Constitution. Under the approach we take today--adhering to the simple uniform standard of Gilbert in all instances--this problem will not arise.
 
 III.
 
 30
 We turn next to a consideration of whether the admiralty nature of the action or the American citizenship of the plaintiff justifies creating a special rule of forum non conveniens. We hold that they do not.
 
 
 31
 (A) ADMIRALTY NATURE OF ACTION
 
 
 32
 There is neither reason nor authority for creating an exception to the general forum non conveniens standard established in Gilbert simply because the case invokes the admiralty and maritime jurisdiction of the court. Our Court consistently has applied the Gilbert standard in reviewing dismissals on the ground of forum non conveniens in admiralty cases. Fitzgerald v. Texaco, Inc., 521 F.2d 448 (2 Cir.1975), cert. denied, 423 U.S. 1052 (1976): Frangiskatos v. Konkar Maritime Enterprises, 471 F.2d 714, 715 (2 Cir.1972) (per curiam); Grammenos v. Lemos, 457 F.2d 1067, 1074 n. 5 (2 Cir.1972); Fitzgerald v. Westland Marine Corp., 369 F.2d 499, 501 (2 Cir.1966) (Kaufman, J.). Accord, Paper Operations Consultants Int'l, Ltd. v. SS Hong Kong Amber, 513 F.2d 667, 671 (9 Cir.1975); Yerostathis v. A. Luisi, Ltd., 380 F.2d 377, 378 (9 Cir.1967); Texaco Trinidad, Inc. v. Astro Exito Navegacion S.A., 437 F.Supp. 331, 333 (S.D.N.Y.1977); Bernuth Lembcke Co. v. Siemens A/G, 1976 A.M.C. 2175 (S.D.N.Y.1976); Transomnia G.m.b.H. v. M/S Toryu, 311 F.Supp. 751, 752 (S.D.N.Y.1970). See also Norwood v. Kirkpatrick, 349 U.S. 29, 36 n. 1 (1955) (Clark, J., dissenting) (treating Gilbert, Koster and Canada Malting, infra, as manifestations of a single doctrine of forum non conveniens).
 
 
 33
 Ironically--in view of the special rule of forum non conveniens for admiralty actions urged by appellant--it is in the field of admiralty that our federal courts have applied the doctrine of forum non conveniens most flexibly and over the longest period of time. Bickel, The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12 (1949); Braucher, note 3, supra, at 920-21. Forum non conveniens has been applied by our federal courts in admiralty actions for almost 180 years. See, e.g., Willendson v. Forsoket, 29 F.Cas. 1283 (D.Pa.1801) (No. 17,682). The Supreme Court has approved its application in admiralty actions for many years. Canada Malting Co. v. Paterson Steamships, Ltd., 285 U.S. 413 (1932); Charter Shipping Co. v. Bowring, Jones & Tidy, Ltd., 281 U.S. 515 (1930); The Belgenland, 114 U.S. 355 (1885).
 
 
 34
 The readiness of the courts to apply the doctrine of forum non conveniens in maritime cases has stemmed in part from admiralty's equitable nature, see Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 513-14 (Black, J., dissenting), and in part from the absence of the usual venue requirements.[7] In most other areas, venue statutes for many years were expected to perform the function of case distribution. In admiralty, where no such statutes are applicable, forum non conveniens grew up instead. The anomalous result urged upon us by appellant would be this: whereas areas with venue statutes have been recognized as appropriate for the application of liberal forum non conveniens rules, one of the few areas without effective venue requirements--admiralty--would be stripped of an important means of controlling its allocation of cases.[8] In view of the concentration of admiralty litigation in this Circuit, the burden this would impose on the Southern and Eastern Districts of New York would be considerable.
 
 
 35
 In short, admiralty and maritime law, far from being an exception to the general body of law on forum non conveniens--as appellant suggests--actually is its source.
 
 
 36
 (B) AMERICAN CITIZENSHIP OF PLAINTIFF
 
 
 37
 The trend of both the common law generally and admiralty law in particular has been away from according a talismanic significance to the citizenship or residence of the parties.
 
 
 38
 (1) The Common Law Generally--The State Courts
 
 
 39
 Few areas of the law have experienced such a dramatic recent evolution as the doctrine of forum non conveniens. Responding as it has to changed circumstances with the flexibility that has long typified the common law, the doctrine today must adapt to a world whose nations--and litigants--are growing more closely linked by bonds of commerce and culture.
 
 
 40
 In 1955 Justice Clark could find but a single jurisdiction, Scotland, which had permitted dismissal on the ground of forum non conveniens against a resident plaintiff. Norwood v. Kirkpatrick, 349 U.S. 29, 41 (1955) (Clark, J., dissenting). The pendulum has now swung in the opposite direction.
 
 
 41
 One of the most significant indications of this trend was the rejection by the New York Court of Appeals in 1972 of its rule of long-standing that the New York residence of either party to an action barred a New York court from dismissing the action on the ground of forum non conveniens. Silver v. Great American Insurance Co., 29 N.Y.2d 356, 278 N.E.2d 619, 328 N.U.S.2d 356, 278 N.E.2d 619, 328 N.Y.S.2d 398 (9172).[9] Accord, Al Nyman & Son, Inc. v. United States Lines, Inc., 44 A.D.2d 516, 353 N.Y.S.2d 8 (1st Dept. 1974) (per curiam) (conversion action dismissed on forum non conveniens grounds where tortious acts occurred outside of New York despite plaintiff's New York residence and the fact that corporate defendant's principal place of business was in New York); Heller v. National General Corp., 39 A.D.2d 688, 332 N.Y.S.2d 511 (1st Dept. 1972) (per curiam) (Silver applied in dismissing New York plaintiff's action on forum non conveniens grounds).
 
 
 42
 The crux of the Silver rule recently was summarized by Judge Feinberg: "If litigation is in a clearly inconvenient forum, why should defendant and the court be burdened with its continuing there, if an alternative forum now exists so that plaintiff will not be without a remedy?" Schertenleib v. Traum, 589 F.2d 1156, 1163 (2 Cir.1978).
 
 
 43
 The fallacy of conditioning forum non conveniens relief solely upon the residence or place of incorporation of the plaintiff was stated forcefully by Chief Judge Fuld in Silver:
 
 
 44
 "Although such residence is, of course, an important factor to be considered, forum non conveniens relief should be granted when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties. The great advantage of the doctrine--its flexibility based on the facts and circumstances of a particular case--is severely, if not completely, undercut when our courts are prevented from applying it solely because one of the parties is a New York resident or corporation." 29 N.Y.2d at 361, 278 N.E.2d at 622, 328 N.Y.S.2d at 402-03.
 
 
 45
 Since Silver the trend in that direction has accelerated. The following recent cases favor a liberal application of forum non conveniens rules in the state courts:[10] Turner v. Evers, 31 Cal.App.3d Supp. 11, 107 Cal.Rptr. 390 (App. Dept't Super.Ct.1973) (following Silver, and applying California statute, rejected bar to forum non conveniens based on residence of parties); Car v. Bio-Medical Applications of Washington, Inc., 366 A.2d 1089 (D.C.1976) (rejected District of Columbia residence of plaintiff as bar to forum non conveniens dismissal); Cray v. General Motors Corp., 389 Mich. 382, 207 N.W.2d 393 (1973) (rejected Michigan residence of defendant as bar to forum non conveniens dismissal); In re the Marriage of Dunkley, 89 Wash.2d 777, 575 P.2d 1071 (1978) (applied forum non conveniens in dismissing proceeding involving petition for modificatino of decree governing custody of children by a Washington resident father); Werner v. Werner, 84 Wash.2d 360, 371, 526 P.2d 370, 378 (1974) (overruled earlier contrary positino with comment, "Most of the states in that minority [those that had rejected forum non conveniens] have since reversed their position and embraced the forum non conveniens doctrine in some form."). Indeed, the Michigan Supreme Court in Cray v. General Motors Corp., supra, counted twenty-one states which followed the doctrine of forum non conveniens in 1973. 389 Mich. at 392, 207 N.W.2d 397.[11]
 
 
 46
 (2) Federal Law Generally
 
 
 47
 More than thirty years ago--shortly after Gilbert and Koster were decided--Congress codified the principles underlying forum non conveniens in enacting 28 U.S.C. Sec. 1404(a). See Reviser's Note, stating that Sec. 1404(a) "was drafted in accordance with the doctrine of forum non conveniens", quoted in Sullivan v. Behimer, 363 U.S. 335, 363 n. 14 (1960) (Frankfurter, J., dissenting). Section 1404(a) therefore codifies a part of the district court's "inherent power", Gilbert, supra, 330 U.S. at 502, to transfer cases to more appropriate places for trial.
 
 
 48
 The standard for obtaining a transfer of a case under Sec. 1404(a) is more easily satisfied than is the standard for obtaining dismissal on forum nn conveniens grounds. Norwood v. Kirkpatrick, supra, 349 U.S. at 32. Accordingly, for the most cases in the federal courts, the easier standard of Sec. 1404(a) has superseded the doctrine of forum non conveniens. Hoffman v. Blaski, 363 U.S. 335, 342 (1960). It would be anomalous for us to hold--as appellant urges--that a standard stricter than Gilbert should be applied in a range of cases which is not covered by Sec. 1404(a) and which had been subject to a liberal dismissal rule before enactment of Sec. 1404(a). Such an interpretation might be understandable if there had been no doctrine of forum non conveniens extant when Sec. 1404(a) was enacted in 1948. In that event it might be urged that Congress did not wish to apply a more liberal dismissal standard to cases not covered by the statute. But such an interpretation makes no sense at all in light of the actual situation, since it was the statement of the general standard of forum non conveniens in cases such as Gilbert which led to the enactment of Sec. 1404(a).
 
 
 49
 Moreover, there are cases where federal courts--including ours--have sanctioned sending an American citizen to another forum for trial pursuant to a defendant's motion to dismiss on the ground of forum non conveniens. The "reluctance" with which this has been done, described in Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 646 (2 Cir.), cert. denied, 352 U.S. 871 (1956), appears not to be as profound as the language might suggest. Indeed, in Vanity Fair --a landmark case in which Judge Waterman recognized the precept that "[a]n American citizen does not have an absolute right under all circumstances to sue in an American court", id. at 645--the precise issue of the deference to be accorded the citizenship of an American plaintiff confronted with a motion to dismiss on the ground of forum non conveniens was not squarely involved in the court's decision. Judge Waterman did acknowledge, however, that "the balance of convenience is strongly in favor of" the defendant, before going on to explain the other factors also supporting trial of the Canadian infringement claim in Canada. Id. at 646-47.
 
 
 50
 In Mizokami Bros. of Arizona, Inc. v. Baychem Corp., 556 F.2d 975 (9 Cir.1977) (per curiam), cert. denied, 434 U.S. 1035 (1978), the Ninth Circuit held that it was proper to dismiss on the ground of forum non conveniens, even though it resulted in an American plaintiff being sent to the Mexican courts for relief. The court, after stressing both the degree of discretion to be accorded the district court and the clear Mexican locus of events which led to the litigation, concluded:
 
 
 51
 "The plaintiff falls back on its United States citizenship as the sole and only possible basis for suing these defendants in a court of the United States. This is not enough. In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.
 
 
 52
 There was no abuse of discretion." Id. at 978.
 
 
 53
 Similarly, in Mohr v. Allen, 407 F.Supp. 483 (S.D.N.Y.1976), a plaintiff was an American citizen who sued on the basis of a purported oral contract with a Mexican national to develop a hotel property in Mexico. Again, Mexico was the clear locus of events. Its law would govern the outcome of the action. Notwithstanding the citizenship of the plaintiff, the district court dismissed the action conditionally, resting its decision on forum non conveniens as an alternative ground.(3) Plaintiff's Citizenship or Residence in Admiralty Law
 
 
 54
 What is true of the law of forum non conveniens generally--that citizenship or residence no longer are absolutely determinative factors--is reflected in recent developments in admiralty as well. For example, in Texaco Trinidad, Inc. v. Astro Exito Navegacion S.A., 437 F.Supp. 331 (S.D.N.Y.1977), a Delaware corporation had been organized to run a business in Trinidad. It sued foreign corporations in the Southern District of New York for damage to its dock in Trinidad. The court dismissed the action on the ground of forum non conveniens.
 
 
 55
 True, there is some dicta in a few earlier cases to the effect that an admiralty court should not dismiss an action by an American libelant on forum non conveniens grounds.[12] During the pre-Gilbert period, however, apparently no court had held, on the facts of the case before it, that it was improper to remit an American libelant to the courts of another country.[13] The instant case appears to be the first one to come before our Court involving an American libelant where the balance of conveniences sufficiently favored another forum to justify use of the doctrine.
 
 
 56
 This would suggest that the dicta in the earlier cases reflected, not some special rule where admiralty plaintiffs were involved, but the general rule for all forum non conveniens motions, as the rule was then understood. In other words, even a landbased forum non conveniens motion against a resident plaintiff would have been subject to the same observations. Such dicta clearly have been rendered obsolete by subsequent developments in the law, notably Gilbert. Thus, the language of the pre-Gilbert cases should be viewed, not as an admiralty exception to what is now the Gilbert rule, but as expressions preceding Gilbert and antedating the modern liberal trend in forum non conveniens.
 
 
 57
 Moreover, the earlier cases often were more liberal than their dicta might indicate. For example, in U.S. Merchants' & Shippers' Insurance Co. v. A/S Den Norske Affrika Og Australie Line, 65 F.2d 392 (2 Cir.1933) (L. Hand, J.), the Court spoke of a citizen's "absolute privilege of resort to its own courts, independ[ent] of any inconvenience to the respondent." Id. at 392. That dictum reflected the then generally held view, since rejected, that citizenship alone was a bar to dismissal on the ground of forum non conveniens by any court, state or federal. The holding of the case, however, was in accordance with the liberal trend in forum non conveniens. The Court upheld the district court's decision which sent a United States corporation to the courts of Norway to litigate its claim against a Norwegian ship owner.[14]
 
 
 58
 In the related area of enforcement of contractual choice of forum clauses which resulted in sending an American plaintiff to a foreign tribunal, this Court was a leader in the federal courts' movement away from the earlier parochial view that such clauses should not be honored. E.g., Wm. H. Muller & Co. v. Swedish American Line Ltd., 224 F.2d 806 (2 Cir.), cert. denied, 350 U.S. 903 (1955). But cf. Indussa Corp. v. S.S. Ranborg, 377 F.2d 200 (2 Cir.1967) (en banc) (choice of forum clause held invalid in the specific context of Sec. 3(8) of COGSA, 46 U.S.C. Sec. 1303(8)). The movement away from the former narrow rule was vindicated by the Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).[15]
 
 IV.
 
 59
 Finally, we turn to the question upon which this appeal originally was argued and decided: whether, under Gilbert, Judge Conner's dismissal of the action on the ground of forum non conveniens was an abuse of discretion. We hold that it was not. Judge Conner's carefully considered opinion, 453 F.Supp. 10, constitutes, in our view, the best demonstration of his sound exercise of discretion.
 
 
 60
 The Supreme Court in Gilbert made it very clear that application of the doctrine of forum non conveniens left a large measure of discretion to the trial judge:
 
 
 61
 "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." 330 U.S. at 508 (footnote omitted).
 
 
 62
 The Court wisely declined to try to define an all-purpose rule. It did set forth the relevant factors to be taken into account. The Court thus necessarily placed heavy reliance on the discretion of the trial judge to balance those factors. Restatement (Second) of Conflict of Laws Sec. 84, Comment b (1971).
 
 
 63
 Even before Gilbert, the existence of this discretion, particularly in admiralty law, was well established. E.g., The Mandu, 114 F.2d 361 (2 Cir.), cert. denied, 311 U.S. 715 (1940); Comment, Admiralty Suits Involving Foreigners, 31 Tex.L.Rev. 889, 889 n. 5 (1953). And, as indicated above, it is a doctrine of continuing current force which we have reaffirmed repeatedly. Farmanfarmaian v. Gulf Oil Corp., supra; Schertenleib v. Traum, supra; Fitzgerald v. Texaco, Inc., supra; Thomson v. Palmieri, 355 F.2d 64 (2 Cir.1966).
 
 
 64
 Appellant challenges the sufficiency of Judge Conner's finding that the Southern District is an inconvenient forum. It points out that, whereas in Farmanfarmaian nine months of discovery was permitted on the question of the appropriateness of the forum, Judge Conner rendered his decision based only on affidavits. This ignores the fact that the two cases are vastly different--Farmanfarmaian being a complex contract action, Alcoa a simple tort action involving damage to a pier. Moreover, it is the well established practice in the Southern District of New York to decide such motions on affidavits. Koster v. Lumbermens Mutual Casualty Co., supra, 330 U.S. at 531; Vanity Fair Mills v. T. Eaton Co., supra, 234 F.2d at 645.
 
 
 65
 The primary concern of appellant resisting trial in Trinidad is that it may recover only $570,000 rather than $8,000,000 from appellee, assuming the latter to have been at fault. Much is made by appellant of the supposed inequity of forcing it to Trinidad where it will be limited in its recovery to a lesser sum.[16] It is abundantly clear, however, that the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens. Canada Malting Co. v. Paterson Steamships, Ltd., 285 U.S. 413 (1932); Koupetoris v. Konkar Intrepid Corp., 535 F.2d 1392, 1397 n. 22 (2 Cir.1976); Kloeckner Reederei and Kohlenhandel, G.M.B.H. v. A/S Hakedal, 210 F.2d 754, 757 (2 Cir.), appeal dismissed by stipulation, 348 U.S. 801 (1954). Moreover, it is not at all unfair for appellant to recover the lesser amount. Its pier was in Trinidad. It was not likely to go traveling. As long as it did not, Trinidad's damage limitation law governed. It would be far more unfair to impose an additional recovery against appellee when appellant, fully familiar with the law of the place where it maintained a permanent business, could have insured its additional risk in a prudent fashion. There is no reason to suppose that it has not done so.
 
 
 66
 All in all, although perhaps not all of us would have reached the same result, we are satisfied that Judge Conner did not abuse his discretion in conditionally dismissing on the ground of forum non conveniens. We listed the factors upon which he relied, in our panel dissenting opinion of January 10, 1979, 654 F.2d 174:
 
 
 67
 "The record established that the case involved an accident that occurred in Trinidad. The damage to Alcoa's pier was in Trinidad. Regardless of where the repair crews may come from, the repair work will take place in Trinidad. Apart from experts and the ship's crew, whatever witnesses may be called are in Trinidad. The alleged tortious conduct of defendant Norcross and the master of the Nordic Regent took place in Trinidad, as did the alleged negligent action on the part of the local pilots' association in Trinidad. The association may be involved and might be impleaded if the case is tried in Trinidad because the presence of a pilot on the Nordic Regent was required by the statute law of Trinidad and Tobago. The law of Trinidad and Tobago also presumably determines the duty fo care owed by the various parties. Finally, the tides and currents around Trinidad may figure prominently in the trial of the case." (footnotes omitted).
 
 
 68
 We conclude that under Gilbert the judge used the correct standard in applying the doctrine of forum non conveniens and did not err in conditionally dismissing the action.
 
 V.
 To summarize, we hold that:
 
 69
 The Gilbert standard, as reaffirmed in Farmanfarmaian, is the proper one for determining motions to dismiss on the ground of forum non conveniens, including those in admiralty actions.
 
 
 70
 Neither the admiralty nature of an action nor the American citizenship of a plaintiff justifies creating a special rule of forum non conveniens.
 
 
 71
 The district court in the instant case, in conditionally dismissing the action on the ground of forum non conveniens, did not abuse its discretion under the Gilbert standard.
 
 
 72
 As the Supreme Court said in another context:"Admiralty practice, which has served as the origin of much of our modern federal procedure, should not be tied to the mast of legal technicalities it has been the forerunner in eliminating from other federal practices." British Transport Commission v. United States, 354 U.S. 129, 139 (1957).
 
 
 73
 Accordingly, the judgment and opinion of the panel on rehearing is vacated; the judgment of the district court is affirmed.
 
 
 74
 Affirmed.
 
 VAN GRAAFEILAND, Circuit Judge, dissenting:
 
 75
 Liberia is a small country about the size of Ohio, located on the west coast of Africa. Its population of approximately 1.5 million people engages mostly in agricultural pursuits, and it has relatively little foreign trade. In 1976, Liberia's imports amounted to approximately $400 million and its exports approximately $457 million.[1] During that same year, however, the Liberian merchant fleet consisted of 2,666 ships totalling over 76 million gross registered tons, making it one of the largest single-flag fleets in the world.[2] Liberia is a "flag of convenience" country, and, by 1976, fleets registered in the principal flag of convenience countries represented 27.6 percent of the total world fleet.[3]
 
 
 76
 Ships such as the Nordic Regent register in flag of convenience countries because those countries subject them to little or no control. Fees and taxes are low, labor regulations and safety standards are minimal, and ship movements are largely unhampered.[4] One needs but little knowledge of American maritime law to appreciate the advantages that flag of convenience ships have over those in the heavily regulated merchant marine of the United States. See Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 310, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970); Lauritzen v. Larsen, 345 U.S. 571, 587, 73 S.Ct. 921, 930, 97 L.Ed. 1254 (1953).
 
 
 77
 To those advantages, this Court now adds another. Henceforth, these somewhat ersatz foreign nationals[5] are to have the benefit of "liberal forum non conveniens rules" applied under "a more liberal dismissal standard" in accordance with "the modern liberal trend in forum non conveniens", pursuant to which an American plaintiff can be ousted from his Country's courts upon a simple balancing of conveniences as between the plaintiff and the defendant. Indeed, the defendants in the instant case have succeeded in having plaintiff's Southern District suit dismissed on the ground that dismissal will satisfy the convenience of essential witnesses, despite the fact that the record does not disclose the name and address of a single such witness or the substance of his anticipated testimony. Of course, defendants' failure to name their Trinidadian witnesses is not surprising considering that the Nordic Regent was manned by an Italian crew, its responsibility for the accident is clear, and the plaintiff's damages are concededly in excess of $570,000, the top recovery permitted under Trinidad law. Dismissal of plaintiff's complaint under such circumstances is an unjustifiably extreme application of even "the more liberal dismissal standard" that our brothers now espouse.
 
 
 78
 By not insisting upon the identification of defendants' alleged witnesses and some indication of the testimony they are expected to give, our brothers have abandoned a well-established requirement of this Circuit and substituted a completely unacceptable standard in its place. Over a quarter of a century ago, Chief Judge Kaufman, then a district judge, said that "[t]he party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Jenkins v. Wilson Freight Forwarding Co., 104 F.Supp. 422, 424 (S.D.N.Y.1952). This has been the required practice in this Circuit up to the present day.
 
 
 79
 "When a party seeks the transfer on account of the convenience of witnesses under Sec. 1494(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).
 
 
 80
 Other courts of appeal are in accord. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir.1973); Chicago, R.I. & P.R.R. v. Hugh Breeding, Inc., 232 F.2d 584, 588 (10th Cir.1956), petition for cert. dismissed under Rule 60, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957); Headrick v. Atchison, T. & S.F. Ry., 182 F.2d 305, 310-11 (10th Cir.1950). Reputable form books have accepted this as the proper practice, see, e.g., 1 Nichols' Cyclopedia of Federal Procedure Forms Sec. 15.19 (2d ed. 1970), and numerous state courts concur, see, e.g., Hurlbut v. Whalen, 58 A.D.2d 311, 316, 396 N.Y.S.2d 518, motion for leave to appeal denied, 43 N.Y.2d 643, 401 N.Y.S.2d 1028, 372 N.E.2d 803 (1977); States Marine Lines v. Domingo, 269 A.2d 223, 226 (Del.1970). It is a salutary requirement designed to prevent injustice and facilitate appellate review. It should not now be discarded by this Court.
 
 
 81
 We do not dissent, however, solely because we find "The Tale of the Essential Witnesses" to be more fictional than factual. We are making law today for cases yet to come, and we are concerned about the casualness with which our brothers are prepared to oust American litigants from American forums. We disagree with our colleagues' decision to weigh the criteria for deciding whether to send an American plaintiff to a foreign country on the same scale that would be used in deciding whether to send him to another state.
 
 
 82
 Justice Frankfurter once wisely observed that a court should not be ignorant as judges of what its members know as men. Watts v. Indiana, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949). As men, we know that we live in a troubled and turbulent world. As judges, we should view that world as it is, not as we would like it to be. "One World", a world united in peace, with "liberty and justice for all", has been the dream of men of good will for countless generations. However, instead of "One World", our planet today is divided into at least three "Worlds", and perhaps four or five.[6] The economic demands of the poorer countries and their nationalistic treatment of foreign investments are evidence to some of a "fissuring of planetary policy that is both wide and deep".[7] "[B]arriers of enmity and fear" divide many of this planet's inhabitants.[8] Armed conflict, terrorism, and rebellion vie for international headlines. American citizens are held hostage in American embassies. Stable governments and independent judiciaries are hardly universal phenomena.
 
 
 83
 Despite all this, our brothers assure us that nations today "are growing more closely linked by bonds of commerce and culture" and dismiss as parochial the oft-expressed reluctance of this Court and others to deprive United States residents of the justice which they know will be fairly dispensed in their own courts.[9] Our brothers apparently feel that the condition of the world has improved so much since 1966 that we need no longer distinguish Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), as we did in Thomson v. Palmieri, 355 F.2d 64, 65-66 (2nd Cir.1966), where we said that, in Gulf Oil, "there was no question of seeking a forum in a foreign state." The headlines in our daily newspapers leaves us no choice but to disagree.[10] Gulf Oil, which involved an action in the Southern District of New York by a Virginia resident against a Pennsylvania corporation, is as distinguishable in the instant case as it was in Thomason v. Palmieri.
 
 
 84
 On the other hand, in Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 524, 67 S.Ct. 828 (1947), the Court said that a plaintiff "should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which ... establish such oppressiveness and vexation to a defendant as to be out of all proportion of plaintiff's convenience, which may be shown to be slight or nonexistent...." That is the rule appellant asks this Court to apply. Appellant says, as this Court has also said, that the application of the rule is most appropriate where the alternative to a plaintiff's home jurisdiction is the court of a foreign state. See Olympic Corp. v. Societe Generale, 462 F.2d 376, 378 (2d Cir.1972).
 
 
 85
 Appellant does not contend, as the majority seem to suggest, that American citizenship alone is a "barrier" to or "impenetrable shield" against dismissal on the ground of forum non conveniens. That is a man of straw argument. Appellant's argument, as illustrated by the following quotation from its brief, simply adopts the law as it has been expressed on numerous occasions by this Court.
 
 
 86
 "As this court held in Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1344 (2d Cir.1972, Friendly, Feinberg and Davis, JJ.), even a balance of convenience in favor of trial abroad 'is not enough to justify a district court in dismissing the complaint of an American citizen, much less to warrant an appellate court's requiring it do so.' quoting with approval the decision in Burt v. Isthmus Development Corp., 218 F.2d 353, 357 (5th Cir.1955), cert. denied, 349 U.S. 922 [75 S.Ct. 661, 99 L.Ed. 1254] (1955) that 'courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country.' " Appellants' Supplemental En Banc Brief at 21-22.
 
 
 87
 It was the Supreme Court in Koster, supra, not appellant, that established "oppressiveness and vexation" as the standard for measuring whether a defendant's inconvenience is sufficient to deprive the plaintiff of the right to litigate in his home forum. We followed this standard in Thomson v. Palmieri, supra, 355 F.2d at 66, where we said that "[t]he central question is one of convenience, and we should respect plaintiff's choice of forum as long as no harassment is intended." The Court of Appeals for the District of Columbia Circuit has done the same. See Founding Church of Scientology v. Verlag, 175 U.S.App.D.C. 402, 409, 536 F.2d 429, 436 (D.C.Cir.1976); Altman v. Central of Ga. Ry., 124 U.S.App.D.C. 155, 157, 363 F.2d 284, 286 (D.C.Cir.),cert. denied, 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966). So also have the Third Circuit, see Hoffman v. Goberman, 420 F.2d 423, 426-27 (3d Cir.1970), and the Fifth Circuit, see Burt v. Isthmus Development Co., 218 F.2d 353, 357-58 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955). Among the district court cases in accord are Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa, 428 F.Supp. 1237, 1253 (S.D.N.Y.1977); Detrick v. Baltimore & O.R.R., 330 F.Supp. 257, 259 (E.D.Pa.1971); McCarthy v. Canadian Nat'l Rys., 322 F.Supp. 1197, 1198-99 (D.Mass.1971); Fiorenza v. United States Steel Int'l, Ltd., 311 F.Supp. 117, 121 (S.D.N.Y.1969).
 
 
 88
 The district court in the instant case, however, was content to rest its decision upon a balancing of conveniences, finding that defendant's inconvenience substantially outweighed plaintiff's and that the litigation "can be conducted most effectively and inexpensively in Trinidad."[11] We would reverse, because we think it better to adhere to the traditional rule that simply balancing conveniences is not enough, when the result is to oust an American plaintiff from his Country's courts. We would continue to hold that, unless the inconvenience to the defendant is so great as to constitute vexation and harassment and result in manifest injustice, plaintiff's choice of a domestic forum should not be disturbed.
 
 
 89
 We disagree with the majority's contention that this Country's Treaties of Friendship, Commerce and Navigation compel a different result. These treaties provide in general for free "access" to United States courts, and the term "access" is usually defined to comprehend, among other things, access to legal aid and exemption from providing security for costs. See, e.g., Treaty of Friendship, Commerce and Navigation, Oct. 1, 1951, United States-Denmark, [1961] 12 U.S.T. 908, 937, T.I.A.S. No. 4797; Treaty of Friendship, Commerce and Navigation, Aug. 3--Dec. 26, 1951, United States-Greece, [1954] 5 U.S.T. 1829, 1911, T.I.A.S. No. 3057. Article XVII of the Treaty of Friendship, Commerce and Navigation between the United States and Liberia, entered into force on November 21, 1939, provides that Liberian corporations and associations "shall enjoy free access to the courts of law and equity, on conforming to the laws regulating the matter, as well for the prosecution as for the defense of rights in all the degrees of jurisdiction established by law." See 54 Stat. 1739, 1746, T.S. No. 956.
 
 
 90
 No treaty requires that foreign nationals receive more favorable treatment in our courts than would an American litigant. See Note, The Convenient Forum Abroad, 20 Stan.L.Rev. 57, 65 (1967). If defendants were compelled to continue this litigation in the United States, they could hardly contend that their treatment was less favorable than that which would be accorded an American defendant or that they had lesser access to United States courts.
 
 
 91
 It is regrettable that our brothers refuse to give any extra consideration to an American plaintiff's choice of his home forum because they fear that Treaties of Friendship, Commerce and Navigation would require that similar consideration be given to a foreign plaintiff's choice of the same forum. It is a strange doctrine indeed that would deprive a citizen of legal rights because, otherwise, the same rights might have to be given to an alien.
 
 
 92
 In any event, there is no reason for the majority to fear that a rule contrary to the one they have adopted would require this Court to treat foreign plaintiffs as if they were residents of the Second Circuit. For venue purposes, residents of other states who bring suit in the Southern District of New York and are not treated as if they were residents of New York. See, e.g., Haase v. Malenkrodt, Inc., 415 F.Supp. 889, 890-91 (S.D.N.Y.1976); Pesin v. Goldman, Sachs & Co., 397 F.Supp. 392, 394 (S.D.N.Y.1975). Treaties of Friendship, Commerce and Navigation do not require that foreign nationals be given greater access to New York courts than would be given to Texans or Californians. Those treaties are not violated, therefore, when the door of access that "revolves" for Liberians, "revolves" as well for Americans. In short, the grant of access has not eliminated the laws and doctrines of venue.[12]
 
 
 93
 In this age of jet transportation, where, as here, two reasonably affluent corporations are engaged in financially significant litigation, the convenience of a few witnesses should be a minor consideration. "[T]he deposing of witnesses abroad or bringing them to the United States is a relatively simple and inexpensive matter in a suit of this size." Fitzgerald v. Texaco, Inc., 521 F.2d 448, 456 (2d Cir.1975) (Oakes, J., dissenting), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 S.Ed.2d 641 (1976); see Note, The Application of Forum Non Conveniens in Maritime Personal Injury Actions Brought by Foreign Seamen in Federal Courts, 1 Hastings Int'l & Comp.L.Rev. 77, 97-99 (1978). The doctrine of forum non conveniens "was designed as an 'instrument of justice,' " Williams v. Green Bay & W.R.R., 326 U.S. 549, 554, 66 S.Ct. 284, 287, 90 L.Ed. 31 (1946) (quoting Rogers v. Guaranty Trust Co., 288 U.S. 123, 151, 53 S.Ct. 295, 305, 77 L.Ed. 652 (1933) (Cardozo, J., dissenting)), and courts should be concerned more with whether justice will be served by a change of venue than with whether one party or the other will save a few dollars in the preparation of his proof.[13]
 
 
 94
 Our review of the instant case has left us with an abiding concern that justice will be ill-served if this litigation is removed to Trinidad. Justice will continue to be ill-served if this Court, adopting a "they knew what they were getting into" approach, persists in ousting American litigants from American forums under the "liberal forum nonconveniens rules" to which our brothers now express adherence.
 
 
 95
 OAKES, Circuit Judge (concurring in dissenting opinion):
 
 
 96
 I concur fully with Judge Van Graafeiland's well-reasoned opinion. I add these few words simply to reiterate the view suggested in my dissent in Fitzgerald v. Texaco, Inc., 521 F.2d 448, 456 (2d Cir.1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976), that the "entire doctrine of forum non conveniens should ... be reexamined in the light of the transportation revolution that has occurred since" Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), were decided.[1] There are several jets a day between New York and Trinidad to transport witnesses, documents, and lawyers if need be. It is totally unrealistic in my view to relegate these parties to trial in Trinidad.
 
 
 97
 As Judge Van Graafeiland points out, there is a basic interest of the United States in exercising jurisdiction to avoid a failure of justice, one that would occur here by virtue of the Trinidad limitation of liability. It is not at all chauvinistic to suggest that the avoidance of such a failure of justice has been a long-standing principle of American admiralty law dating back at least to The Belgenland, 114 U.S. 355, 368-69, 5 S.Ct. 860, 866, 29 L.Ed. 152 (1885) (collision between Norwegian barque and Belgian steamship). See Gkiafis v. S.S. Yiosonas, 387 F.2d 460, 462 (4th Cir.1967) (Greek seamen suing Panamanian vessel); Motor Distributors, Ltd. v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 465 (5th Cir.), cert. denied, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957) (suit against Norwegian vessel by various foreign nationals). American litigants are entitled to treatment at least as good as that accorded to the foreign litigants in these cases.
 
 
 98
 And a limitation upon or denial of recovery is in and of itself a ground for not dismissing on the basis of the forum non conveniens doctrine. Bickel, The Doctrine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12, 28, 44, (1949). That doctrine, which is totally unrealistic in a case of this nature, involving these sums, is being applied here to wreak injustice on an individual litigant for no reason that makes any sense to me. The reference in the majority opinion to "court efficiency," majority op. at 6, rings very hollow: by what standard is "court efficiency" improved by dismissing this case? Is "court efficiency" a euphemism for something else? In this respect, perhaps, I am a little chauvinistic. American taxpayers, I think, have a certain basic right of access to American courts when the latter have jurisdiction--a right upon which judicially-made rules in the supposed interests of "court efficiency" should not unduly impinge.
 
 
 
 *
 Judge Gurfein, who was a member of the en banc Court, unfortunately died on December 16, 1979. Prior to his death, he had voted to affirm the judgment of the district court. He did not have the opportunity, however, to see this opinion prior to his death
 
 
 [1]
 We assume familiarity with the statements of fact set forth in the opinion of the district court, 453 F.Supp. 10 (January 17, 1978), and in the two sets of panel opinions of this Court, 654 F.2d 165 (August 31, 1978), and 654 F.2d 169 (January 10, 1979). Our August 31 panel decision, by a divided vote, affirmed the district court's conditional dismissal of the action on the ground of forum non conveniens. Our January 10 panel decision which is the subject of the instant en banc proceeding in this Court
 
 
 [2]
 We believe that it is neither necessary nor appropriate to recount in detail the contentions of the parties in the district court or the Gilbert factors relied on by Judge Conner in exercising his discretion in granting the forum non conveniens motion. They are fully set forth in the district court opinion. Moreover, the issue that triggered the instant en banc proceeding was not whether the judge had abused his discretion; rather, it was the legal issue as to what is the proper standard for determining a motion to dismiss an admiralty action on the ground of forum non conveniens. The panel majority, in its January 10, 1979 opinion, held for the first time that the Gilbert standard "does not, and should not, establish the correct standard for determining when American citizens should have access to their country's admiralty courts." 654 F.2d at 170. That was the proposition urged by Alcoa in its petition for rehearing addressed to the panel; it was adopted by the panel by a divided vote; and it is the central issue before us in this en banc proceeding
 
 
 [3]
 Scottish judges were the originators of the idea that a law court could refuse to hear a case over which it had jurisdiction. The distinction between forum non conveniens and forum non competens in non-admiralty cases first emerged in Scotland about 1845. Braucher, The Inconvenient Federal Forum, 60 Harv.L.Rev. 908, 909 (1947) (hereinafter cited as Braucher). The English courts, however, generally were unsympathetic to the idea. E.g., Clements v. Macauley, 4 Macph. 583, 592-93 (1866), cited in Braucher, supra, at 910. Even at the time of the Supreme Court decision in Gilbert, the English standard for granting a motion to dismiss on the ground of forum non conveniens required a showing that the trial of the case in the chosen forum would be vexatious and oppressive--in effect, the standard urged upon us by appellant in the instant case. Williams v. Green Bay & W.R.R., 326 U.S. 549, 554-55 n. 4 (1946)
 
 
 [4]
 The factors set forth by the Court were the following:
 "If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
 Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that it at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at 508-09 (footnote omitted).
 
 
 [5]
 Moreover, the abuse of discretion standard appears to be the same in both cases. Gilbert, 330 U.S. at 508-09; Koster, 330 U.S. at 531-32
 
 
 [6]
 Between 1946 and 1953 alone, the United States concluded nine bilateral treaties (with China, Italy, Ireland, Uruguay, Colombia, Greece, Israel, Ethiopia and Egypt), all of which provided for access to each country's courts on a "national treatment" basis, with eight specifying access on a most-favored-nation basis. Wilson, Access-to-Courts Provisions in U.S. Commercial Treaties, 47 Am.J. Int'l Law 20, 45 (1953); 20 Harv.Int'l L.J. 404, 411 n. 40 (1979) (relevant treaties summarized). Other more recent treaties with similar provisions include Agreement on Trade Relations, Mar. 17, 1978, United States-Hungary, T.I.A.S. No. 8967; Treaty of Friendship, Establishment and Navigation, Feb. 21, 1961, United States-Belgium, 14 U.S.T. 1284, 1289; Treaty of Friendship, Commerce and Navigation, Oct. 1, 1961, United States-Denmark, 12 U.S.T. 908, 912
 It might be argued that such provisions were not meant to govern a forum non conveniens situation. Protocols to the Danish and Belgian treaties mentioned above, for example, both refer specifically to entitlement to legal aid as being encompassed within the term "access". But as the Danish protocol makes clear:
 "The term 'access' as used in Article V, paragraph 1, comprehends, among other things, access to free legal aid and right to exemption from providing security for costs and judgment." 12 U.S.T. at 937 (emphasis added).
 Obviously, the protocol does not limit the meaning of access to entitlement to legal aid or privileges relating to security (which themselves are not unrelated to the typical forum non conveniens issue). Nor is such a provision a constant in the treaties mentioned above. The parallel Belgian protocol refers only to legal aid, 14 U.S.T. at 1309. The treaty involved in Farmanfarmaian contained no such protocol provision at all. Further, the argument for a limiting construction of the treaties based on such protocols would conflict with the clearest meaning of access to the courts. Such access would have little value if the door that admits is a revolving one. Finally, the chief flaw in this approach is that is precisely contrary to the interpretation of the Iranian treaty reached by this Court in Farmanfarmaian.
 
 
 [7]
 In maritime cases, the transitory nature of the security available to the libelant was thought to justify the application of the forum rei sitae doctrine. Bickel, supra, at 45-46
 
 
 [8]
 This is a fortiori so because in admiralty a foreign court usually will be the alternative forum--one of the few remaining areas where 28 U.S.C. Sec. 1404(a) is not applicable
 
 
 [9]
 The Silver decision prompted Dean McLaughlin to remark: "At long last, the New York Court of Appelas has abandoned this primitive rule." N.U.Civ.Prac.Law Rule 327 (McLaughlin, Practice Commentary) (McKinney Supp.1979)
 Another commentator noted at the time of the decision in Silver that seven states had "flatly ruled that a case may be dismissed despite residence of a party." (California, Delaware, Massachusetts, New Jersey, Oklahoma, Pennsylvania, and Wisconsin). An intermediate appellate court of Florida had gone the other way. 39 Brooklyn L.Rev. 218, 223-24 & nn. 38-39 (1972).
 
 
 [10]
 Of the scattered states which do not follow the doctrine, some have declined to do so because of peculiar provisions of their state constitutions which have been construed to guarantee residents a local forum. E.g., McDonell-Douglas Corp. v. Lohn, 557 P.2d 373 (Colo.1976); Chapman v. Southern Ry., 230 S.C. 210, 95 S.E.2d 170 (1956). As indicated at note 12, infra, there is no such provision where admiralty jurisdiction is concerned. Apparently the only state where the court of last resort has continued to reject the doctrine as a matter of common law is Florida. Houston v. Caldwell, 347 So.2d 1041 (4th Dist.Ct.App.1977) (residency held not to be key to deciding forum non conveniens motion), rev'd, 359 So.2d 858 (Fla.1978)
 
 
 [11]
 The common law trend toward liberal application of the doctrine of forum non conveniens has been reflected in legislation which has achieved the same result in several states. ' E.g., Calif.Civ.Proc.Code Sec. 410.30 (West); Wis.Stat. Sec. 262.19. The federal transfer statute, 28 U.S.C. Sec. 1404(a) (1976), was the forerunner of the state statutes
 
 
 [12]
 The original underpinning for this view, as stated in some early cases (all, it so happens, in a single district court), was that the constitutional grant of jurisdiction to the federal courts in such cases ("The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction", U.S.Const., art. III, Sec. 2) required retention of every case. THE EPSOM, 227 F. 158 (W.D.Wash.1915); The Falls of Keltie, 114 F. 357 (D.Wash.1902); Bolden v. Jensen, 70 F. 505 (D.Wash.1895)
 There are obvious infirmities in this interpretation. One respected commentator has characterized it as a "dubious doctrine". Bickel, supra, at 43. See John Fabrick Tractor Co. v. Penelope Shipping Co., 278 F.Supp. 182, 183 (S.D.N.Y.1967) (dictum). There are at least three problems with this approach. First, the same might be said with respect to the application of forum non conveniens to any case grounded upon federal jurisdiction-such as a diversity action. Second, it is inconsistent with the power of Congress to supervise the inferior federal courts. U.S.CONST., art. III, Sec. 2. Third, the United States has signed treaties withdrawing from our courts jurisdiction over actions between American crew members and foreign ship masters. Such withdrawals of jurisdiction have been upheld. The Albergen, 223 F. 443 (S.D.Ga.1915), and cases cited at 444-45; The Welhaven, 55 F. 80 (S.D.Ala.1892); The Burchard, 42 F. 608 (S.D.Ala.1890).
 
 
 [13]
 As a practical matter, the cases that would give rise to such a situation are rare. Swift & Co. Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 697 (1950); Braucher, supra, at 921
 
 
 [14]
 The asserted justification for the Court's apparent departure from the "absolute privilege" was that the American libelant was acting in the place of a Dutch shipper. This rationale strikes us as unpersuasive, since the American underwriter already had paid the Ditch shipper's claim. The only interests left in the case were those of the American underwriter and the Norwegian ship owner. Nevertheless, the American plaintiff was sent to a foreign forum because the district judge thought that "the balance of convenience was greatly in favor of a Norwegian trial." 65 F.2d at 392
 
 
 [15]
 Referring to the Bremen decision, a commentator concluded:
 "As a result of this decision, and also of action taken at the state level to give greater flexibility to the doctrine of forum non conveniens [specifically, silver], much progress has been made to liberalize American rules and make them more consistent with those prevailling in England and in many Continental countries, at least in respect of freely negotiated agreements." (footnotes omitted). DeLaume, Choice of Forum Patriae; Something Happened on the Way to the Forum: Zapata and Silver, 4 J. Mar. Law & Com. 295, 297 (1973).
 
 
 [16]
 There is no suggestion in the record that Trinidad is not an adequate forum. Appellee has submitted to the jurisdiction of the courts there and has offered a letter of guaranty that a judgment against it in Trinidad will be satisfied. Those are express conditions of the dismissal of the action. Pg. 150, supra. It would be another matter of Judge Conner had remitted Alcoa to a foreign court in a way that deprived it of security it otherwise would have had, e.g., Swift & Co. Packers v. Compania Colombiana del Caribe, S.A., supra, 339 U.S. at 697-98, or had remitted it to a judicial system wholly devoid of due process. This is not that case
 
 
 [1]
 Statesman's Year-Book 785 (1978)
 
 
 [2]
 Id. at 786
 
 
 [3]
 Osieke, Flags of Convenience Vessels: Recent Developments, 73 Am.J.Int'l L. 604, 608 n. 14 (1979)
 
 
 [4]
 Id. at 604, 615
 
 
 [5]
 In Jones Act cases, this Court "[looks] through the facade of foreign registration" to the actual ownership behind it. Bartholomew v. Universe Tank Ships, Inc., 263 F.2d 437, 442 (2d Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959). For a broader application of this practice, see Chemical Carriers, Inc. v. L. Smit & Co.'s Internationale Sleepdienst, 154 F.Supp. 889 (S.D.N.Y.1957)
 
 
 [6]
 Oliver, Legal Relations Among Legal Systems: Games, Pains and Some Pending Problems, 127 U.Pa.L.Rev. 909, 912-13 (1979)
 
 
 [7]
 Id. at 913-14
 
 
 [8]
 R. Sterling, Macropolitics: International Relations in a Global Society 287 (1974)
 
 
 [9]
 There are, of course, nations whose standards of justice are high as those of the United States. However, the majority's holding, like Alexander Pushkin's gray-haired magistrate, "contemplates alike the just and the unjust." We do not presume to identify those countries falling within the latter category. Moreover, we think it would prejudice this country's foreign relations and place an intolerable burden of proof upon American litigants for courts to make this factual determination on a case-by-case, country-by-country basis. See Menendez Rodriguez v. Pan American Life Ins. Co., 311 F.2d 429, 433 (5th Cir.1962), judgment vacated on other grounds, 376 U.S. 779, 84 S.Ct. 1130, 12 L.Ed.2d 82 (1964). Pending the millennium, it is better, we think, to adhere to the traditional doctrine that, in the absence of unusually extreme circumstances and manifest injustice, the American plaintiff's choice of his home forum should not be disturbed
 
 
 [10]
 When a newsman returns from a foreign country with the report that its inhabitants are "blind drunk with their hatred of the U.S.", see U.S. News & World Report, January 28, 1980 at 32, this Court need not, indeed may not, accept it as an adjudicated fact. This does not mean, however, that we should ignore it and the countless other reports of a similar nature while we declare the traditional reluctance of American tribunals to oust American litigants from domestic forums to be exaggerated and obsolete
 
 
 [11]
 In Leasco Data Processing Equipment Corp. v. Maxwell, supra, 468 F.2d at 1344, after finding that the balance of convenience favored a trial in England, this Court said "[b]ut that is not enough to justify a district court in dismissing the complaint of an American citizen . . . ." Similarly, in Mobil Tankers Co. v. Mene Grande Oil Co., 363 F.2d 611, 614 (3d Cir.), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966), the Court said that the election of his home forum by ac citizen of the United States "should not be disregarded in the absence of persuasive evidence that the rejection of jurisdiction will result in manifest injustice to the respondent." The Court then concluded, "This is so even though the more convenient forum may be the foreign one." Id. These statements of the law stand in marked contrast to those of the district court in the instant case
 
 
 [12]
 Under the venue provisions of 28 U.S.C. Sec. 1391(a) a resident of the Southern District of New York may be sued in any other district of the United States by a resident of that district. He may be sued by a non-resident alien only in the Southern District of New York on where the claim in suit arose. Under the majority's interpretation of the Treaties of Friendship, Commerce and Navigation,a the non-resident alien should be able to sue the New York resident in any district in the United States; otherwise the residents of those districts have greater "access" to their courts than do the non-resident aliens. Obviously, this cannot be what the Treaty signatories had in mind
 
 
 [13]
 We are not so naive as to believe that the dispute between the parties on this appeal concerns the convenience of witnesses. This Court is really being asked to decide whether the defendants may reduce their obvious liability to the plaintiff by being given the benefit of Trinidad's limitation of liability statute. If this litigation is removed to Trinidad, the odds are overwhelming that not a single witness will be called; the case will be settled for about ten cents on the dollar of plaintiff's loss
 
 
 [1]
 In 1949 the late Alexander Bickel, referring to the "device" of forum non conveniens, said, "The device has been in use in admiralty in the United States for 150 years and more and has never received an overhauling. It needs one pretty badly." Bickel, The Doctrine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty [subtitled An Object Lesson in Uncontrolled Discretion ], 35 Cornell L.Q. 12, 13 (1949). Such an overhauling is even more necessary today; it still has not occurred