**PANAMA PROCESSES S.A., Plaintiff,**
**v.**
**CITIES SERVICE COMPANY, Defendant.**
**No. 73 Civ. 2024.**

United States District Court,
S. D. New York.
June 26, 1973.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Eaton, Van Winkle & Greenspoon, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant by James C. Blair, J. Webb Moniz, New York City, of counsel.

GURFEIN, District Judge.

The defendant moves to dismiss the complaint in this action for a declaratory judgment on the ground of lack of jurisdiction over the subject matter and on the ground that the complaint fails to state a claim upon which relief can be granted. The defendant has limited its argument to a single point, that there is no "case or controversy" in the constitutional sense which would support jurisdiction.

The plaintiff is Panama Processes S. A. ("Panama"), a Panamanian corporation with its principal place of business in Geneva, Switzerland. It does not do business in the State of New York. The defendant, Cities Service Company ("Cities") is a Delaware corporation with its principal executive office in New York City. Jurisdiction is based on 28 U.S.C. § 1332(a), being a civil action between a citizen of a foreign state and a citizen of a State, with the matter in controversy alleged to exceed the $10,000 jurisdictional requirement.

The complaint alleges substantially the following:

Compania Petroquimica Brasileira-Copebras ("Copebras") is a Brazilian corporation which was organized in 1955. In September 1965, Copebras was owned by the Celanese Corporation of America ("Celanese"), the plaintiff and Columbi-

an Carbon, Inc. ("Columbian") which was a wholly owned subsidiary of the defendant.

In August 1965 Celanese had indicated its desire to sell its shares (38.5% of preferred and 34% of common stock). Columbian wanted Celanese to sell its stock to Copebras which would have given Columbian an absolute majority of the shares. Columbian at the time held 46.5% of the preferred and 46% of the common; and Panama, with 15% of the preferred and 20% of the common, was then able by joining with Celanese to out-vote Columbian.

The plaintiff objected to any sale by Celanese of its shares to Copebras on the ground that this would place the plaintiff at the mercy of Columbian with respect to declaration of dividends and capital expenditures; and it would also divest the plaintiff of any participation in the management and control of Copebras.[1]

It is further alleged that to induce the plaintiff to consent to the purchase of the Celanese held shares by Copebras, Columbian entered into an agreement with the plaintiff dated September 7, 1965 (Ex. A).[2]

The complaint stresses the alleged "covenant" by Columbian to cause Copebras to refrain from undertaking any further expansion of its productive ca-

---

1. No Brazilian law is cited to explain whether there was any legal basis for such objection by the plaintiff.

2. Exhibit A to the complaint, letter dated September 7, 1965 from Columbian Carbon Company to Panama Processes, S.A., reads as follows:

Gentlemen:

In the event Columbian Carbon Company, (Columbian) attains a majority position in the stock interest of Companhia Petroquimica Brasileira (Copebras), you as a minority shareholder have expressed your concern as to the dividend policy Columbian would adopt.

It must be recognized that future policy of this kind may be affected by the industrial, fiscal, and political situation in Brazil, and that the corporate objectives and competitive position of Copebras may change from time to time.

It is definitely the intention of Columbian after due consideration of the above factors to cause Copebras to declare dividends, insofar as it may legally do so, to the extent of at least 50% of each year's net income after taxes.

Any declaration or omission of dividend will be voted only after full consultation and, if possible, agreement with all minority shareholders.

Columbian will not cause Copebras or its subsidiaries to undertake any further expansion of its productive capacities beyond what has already been approved as of this date, unless dividends to the extent of at least 50% of each year's net income after taxes, cumulative starting with the calendar year 1964, have been paid, unless such expansion has been approved by Panama Processes and such cumulative dividends have been waived.

The provision of this paragraph shall not be applicable to carbon black operations to the extent of $1,500,000 in the event a competitive carbon black plant is not in operation by December 31, 1967.

At such time when Celanese Corporation of America (Celanese) ceases to have representation on Copebras' Consultative Board, Panama Processes will be permitted to designate one additional individual to have representation on Copebras' Consultative Board. Further, Panama Processes shall have the right at the next stockholders' meeting of Copebras, with the approval of Celanese, to designate one additional individual to have representation on Copebras' Board of Directors.

Columbian will not transfer its stock in Copebras unless the transferee thereof agrees to assume all the obligations of the transferor under this agreement. The obligations of Columbian under this letter will terminate in the event Panama Processes' interest in Copebras becomes less than 15%.

If the foregoing correctly states Panama Processes' understanding concerning the matters covered herein, it is requested that Panama Processes indicate its acceptance hereof and agreement hereto by executing this letter in the space provided below.

Very truly yours,

COLUMBIAN CARBON COMPANY

WITNESS: By _____

Executive Vice President

ACCEPTED and AGREED TO:

This 8th day of September, 1965.

PANAMA PROCESSES, S. A.

WITNESS:

By _____

pacities unless dividends amounting to at least 50% of each year's net income after taxes have been paid on a cumulative basis starting with the year 1964.

Ultimately the Celanese owned shares were bought by Copebras. Since then Columbian and its successor, the defendant, have named a majority of the board of directors and of the consultative board, while the plaintiff has named a minority of each.

The dispute that has allegedly arisen is described as a controversy with respect to the continued binding effect of Exhibit A. The complaint sets forth a quotation from a letter of February 13, 1973 from Cities (Exhibit B) which states that Cities believes that the September 7, 1965 letter is not binding. There followed, as alleged in the complaint, several letters in which Cities reiterated that position and in which the plaintiff maintained on the contrary that the September 7, 1965 letter is still binding.

Apparently, some time before January 1973, Copebras had announced its intention to borrow money under a loan agreement that would restrict the amount of dividends payable by Copebras until repayment of the loan. The loan was apparently for the purpose of construction. These facts do not appear as allegations of the complaint, but are gleaned from the letters annexed as exhibits. Apparently, the plaintiff had made formal objection to the consultative board which were rejected, since Cities' letter of February 13, 1973 concludes as follows:

"Cities Service has carefully considered your objections, but continues to believe that the decisions made by the Consultative Board in regard to the expansion project and related loan agreements are in the best interest of Copebras. Cities, therefore, plans to continue to exercise such voting rights as we may have to cause Copebras to go forward in what we believe to be a sound business course."

The complaint alleges that "by reason of this controversy, the rights of the plaintiff and the obligations of the defendant under Exhibit A are in dispute and doubt has been raised with respect thereto."

If Exhibit A is a binding contract, the language of Cities is clearly a repudiation and may be deemed an anticipatory breach.

The relief sought is for judgment "a) declaring that the said contract dated September 8, 1965 remains in full force and effect and is binding upon the defendant in accordance with its terms; b) restraining and enjoining the defendant from in any wise breaching or failing to comply with the terms and conditions of said agreement." There is no prayer for other and further relief.

Curiously, no declaratory relief is sought for an *interpretation* of the obligations of the contract although the controversy itself surely includes the expressed interpretation put forward by the defendant that it may proceed with the loan and the expansion project on the ground that Exhibit A is subject to changes in the industrial, fiscal and political situation in Brazil and to the corporate objectives and competitive position of Copebras, as well as because the contract has lapsed after a reasonable time.

The defendant notes that the complaint fails to assert that any of the proposed acts will constitute a breach of Exhibit A. It, therefore, concludes that a simple declaration, as sought by the plaintiff, that Exhibit A remains binding would be meaningless in resolving any actual controversy between the parties or in supplying any guide for future action.

Since the defendant asserts the right to take the actions threatened even if Exhibit A is still binding, a mere declaration that it is still binding obviously would not resolve the controversy.

In its brief the plaintiff does argue the interpretation of the alleged agreement, although it fails to seek commensurate relief by a pertinent declaratory judgment. It argues that Columbian's covenant is unconditional and not de-

feasible by governmental policy changes or changes in corporate objectives, and that any deviation from strict performance of the covenant is a breach.

Why it does not ask for a declaration that it is right on these issues remains a mystery, but it does not seek such a declaration.

The question arises, therefore, where a contracting party threatens to do something contrary to the plaintiff's reading of a contract, whether the Court should assume jurisdiction over a declaratory judgment action on either of two alternative grounds: (a) that the contract is no longer binding or (b) if it is still binding, that the threatened acts are not in breach of the contract.

If the Court should hold that the contract is no longer binding, that could determine the controversy. But if the Court should hold that the contract is binding, without more, that would leave the parties without a determination of whether the threatened acts are lawful or not. In that event, there would be no actual resolution of the true matter in controversy. See Lewis v. Green [1905] 2 Ch. 340.

■ The Federal Declaratory Judgment statute is couched in terms which give the District Court power to determine, as a matter of sound discretion, whether to entertain the action at all. 28 U.S.C. § 2201; Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4 Cir. 1937).

The classic formulation by Professor Borchard, father of the declaratory judgment statutes, comes to mind: "It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served." Borchard, Declaratory Judgments, 29 (2d ed. 1941). Support for this view is found in the language of the Report of the Judiciary Committee of the Senate that "[t]he

Court has a discretion now hardened into rule, not to issue the judgment if it will not finally settle the rights of the parties." Senate Report No. 1005, 73rd Cong., 2d Sess. (May 10, 1934), p. 5.

■ As Judge Parker wrote, the declaratory judgment remedy "should not be accorded, however, to try a controversy by piecemeal, or to try particular issues without settling the entire controversy. . ." Aetna Casualty Co., supra, 92 F.2d at 325.

And Borchard states:

"The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished the Court should decline to render the declaration prayed." Borchard, supra, at 299.

The Court of Appeals for this Circuit has accepted Professor Borchard's formulation adding that "if either of these objectives can be achieved the action should be entertained." See Broadview Chemical Corp. v. Loctite Corp., 417 F. 2d 998, 1001 (2 Cir. 1969).

■ In the case at bar, the declaration prayed for will not settle the legal relations in issue nor will it terminate the controversy giving rise to the proceeding—the claimed right of the defendant to restrict the dividends and to engage in the expansion project. The declaratory relief sought here would not "terminate the controversy giving rise to the proceeding; when it will not be effective in that respect, the court may decline to grant it." Cha-Toine Hotel Apartments Bldg. Corp. v. Shogren, 204 F.2d 256, 258 (7 Cir. 1953).

In sum, while I need not agree with the defendant's contention that there is no "case or controversy" in the constitutional sense, since there are adverse par-

ties, one of which is faced with threatened action, and there is an issue between them, the continuing validity of the contract, I decline jurisdiction, in my discretion, for the reasons stated in this opinion—the inconclusive nature of the relief sought.

Nor do I think it incumbent upon the Court to amplify on its own motion the relief sought by the plaintiff. There may be unseen reasons of strategy for the restriction of the action to the relief sought—which asks for no interpretation of the contract itself. That is not the concern of the Court.

It may be noted further that simply to enjoin a breach of the terms of this disputed contract, as requested by the plaintiff, would do no more than engender a fresh dispute on the meaning of the decree itself.

In the discretion of the Court, the complaint is dismissed.

It is so ordered.