880

Abolbashar FARMANFARMAIAN,
Plaintiff-Appellant,

v.

GULF OIL CORPORATION, Mobil Oil
Corporation, Exxon Corporation, Texaco Inc., American Independent Oil Company, Atlantic Richfield Company, Continental Oil Company, Getty Oil Company, Charter Oil Company, Standard Oil Company of California and Standard Oil Company of Ohio, Defendants-Appellees.

No. 5, Docket 77–7507.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1978.

Decided Dec. 18, 1978.

Martin Kleinbard, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Robert S. Smith, Adele R. Wailand, New York City, of counsel), for plaintiff-appellant.

John A. Donovan, New York City (Hughes, Hubbard & Reed, New York City, Otis Pratt Pearsall, Ronald J. Tabak, New York City, of counsel), for defendants-appellees American Independent Oil Co., Atlantic Richfield Co., Charter Oil Co., Continental Oil Co., Getty Oil Co. and The Standard Oil Co. of Ohio.

Sullivan & Cromwell, New York City (Robert MacCrate and James R. DeVita, New York City, of counsel), Albert P. Lindemann, Jr., New York City, for defendant-appellee Exxon Corp.

Donovan, Leisure, Newton & Irvine, New York City (A. Vernon Carnahan, John P. Casaly and Susan Manca, New York City, of counsel), H. Francis Shattuck and David H. Finnie, New York City, for defendant-appellee Mobil Oil Corp.

Lord, Day & Lord, New York City (John W. Castles, 3d and Eugene F. Bannigan, New York City, of counsel), for defendant-appellee Standard Oil Co. of California.

Edward F. Gilhooly, Philadelphia, Pa., for defendant-appellee Gulf Oil Corp.

Charles F. Kazlauskas, Jr. and Lawrence R. Jerz, White Plains, N. Y., for defendant-appellee Texaco Inc.

Before FEINBERG and MULLIGAN, Circuit Judges, and PRATT, District Judge.*

FEINBERG, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Robert L. Carter, J., conditionally dismissing on forum non conveniens grounds this action for breach of contract and tortious interference with contract rights. We affirm.

This lawsuit is brought by Dr. Abolbashar Farmanfarmaian, an Iranian citizen and attorney, against eleven American Oil companies. The facts are set out in greater detail in Judge Carter's full and thoughtful opinion, reported at 437 F.Supp. 910 (S.D.N.Y. 1977). The following will suffice here. The district court found that the action arises from the breach of a 1971 written agreement between plaintiff and the Iranian Investment Corporation, an Iranian subsidiary owned by the oil company defendants (40%) and three European oil companies (60%). The agreement allegedly provided an option for repurchase by plaintiff, and others affiliated with him, of a one-third stock interest in Pazargad Chemical Company, an Iranian petro-chemical manufacturer, for approximately $765,000.[1] Such repurchase would have allowed plaintiff to regain the control of Pazargad he had before refinancing needs forced him to relinquish it in 1965. Allegedly, the breach of this option agreement to repurchase the stock was the product of pressure from the Iranian government in the course of negotiating the new oil agreement of July 19, 1973 between Iran and the American oil company defendants and the three European oil companies. The stock was allegedly transferred instead to the Iranian government's oil corporation.

After allowing plaintiff to take discovery for nine months on the connection this dispute has with New York, including efforts to assess whether relevant evidence and witnesses are present here, Judge Carter dismissed this action on forum non conveniens grounds on condition

(1) that the defendants waive any defense that they might have relating to any statute of limitations that did not exist prior to the initiation of suit in this district; (2) that the defendants consent to the jurisdiction of the Iranian courts, and that they submit to service of process in Iran, which shall take place within 90 days from the filing of this opinion.

437 F.Supp. at 928. The judge based dismissal on the following:

Since these agreements were reached in Iran, between Iranian parties and concerning the shares of an Iranian manufacturer (Pazargard), it is clear that evidence of the breach itself—assuming that one took place—must come primarily from Iran, and the major witnesses whose testimony may be needed concerning this breach will also most likely come from there. In addition, defendants have contended that the transfer . . . of the Pazargad shares to [the Iranian government's oil corporation] was *compelled* by the Iranian government; and while plaintiff alleges that [transfer] was merely *induced* by Iran . . . , any resolution of plaintiff's claims would of necessity require first some conclusion as to the role of the Iranian government in these events. The proof as to that point, obviously, would come primarily from Iran.

Aside from these factors, which by themselves weigh heavily toward declining jurisdiction in favor of Iran, it must be recognized that the validity of plaintiff's claims must be determined under Iranian and not American law. Having already had occasion in this case to examine Iranian law at least preliminarily, I know from first-hand experience what a difficult task it is to reach any conclusion as to its substance.

* Hon. George C. Pratt of the United States District Court for the Eastern District of New York, sitting by designation.

1. This figure comes from the complaint filed in November 1975, and is apparently based on the then current exchange rate for approximately 50 million Rials.

437 F.Supp. at 923–24 (Emphasis in original; footnotes omitted). Judge Carter found, in conclusion, that despite plaintiff's opportunity to discover facts to back up his claim that the Southern District is a convenient forum, "[t]he case for dismissal . . . remains overwhelming." 437 F.Supp. at 925.

While we believe that the issue whether the action should have been dismissed is perhaps somewhat closer than Judge Carter suggested, we affirm the dismissal without much pause because a district judge has wide discretion in this area, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Schertenleib v. Traum,* 589 F.2d 1156 (2d Cir. 1978), and here there is no "clear showing" of abuse of that discretion, *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976).

■ .A great deal of Judge Carter's opinion was devoted to plaintiff's claim, disputed by defendants, that plaintiff could not have sued defendants in Iran as a matter of right under Iranian jurisdictional law, and therefore Iran does not satisfy the alternative forum prerequisite for invocation of the forum non conveniens doctrine as enunciated in *Gulf Oil, supra,* 330 U.S. at 506–07, 67 S.Ct. 839, even though defendants now consent to suit there. For the reasons stated in our recent opinion in *Schertenleib v. Traum,* 589 F.2d 1156 (2d Cir. 1978), we hold, as Judge Carter did, that there was no reason to determine whether defendants were initially subject to the compulsory jurisdiction of Iran. Once defendants consented to suit in Iran, and Judge Carter found that there was an existing alternative forum, he had the power to apply the forum non conveniens doctrine after balancing all of the relevant considerations.

■ We feel constrained to comment, however, on statements in the judge's opinion to the effect that a foreign plaintiff's "right to sue in the United States is clearly of a lesser magnitude than that of an American citizen." 437 F.Supp. at 923, 927. Whatever the merits of that proposition generally, which does find some support in cases suggesting that our courts should be quite cautious in dismissing on forum non conveniens grounds when suit is brought by an American citizen, see, e. g., *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir. 1972), we think it has no application where, as here, a treaty between the United States and the foreign plaintiff's country allows nationals of both countries access to each country's courts on terms no less favorable than those applicable to nationals of the court's country. 8 United States Treaties and Other International Agreements 900, 902–03 (1957). Our view on this point in no way affects the district court's disposition of the case because the judge applied the same forum non conveniens standards as would be applied were the plaintiff an American citizen.

In conclusion, we hold that the district court had the power to dismiss the case on forum non conveniens grounds, and we affirm the exercise of Judge Carter's discretion in dismissing the case.