PANAMA PROCESSES, S.A.,
Plaintiff-Appellant,

v.

CITIES SERVICE COMPANY,
Defendant-Appellee.

No. 872, Docket 80–9100.

United States Court of Appeals,
Second Circuit.

Argued April 14, 1981.
Decided May 29, 1981.

Albert I. Edelman, New York City (Brian J. Gallagher, John Hartje, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, on brief), for plaintiff-appellant.

James C. Blair, New York City (Alisa F. Levin, Neil P. Forrest, Cleary, Gottlieb, Steen & Hamilton, New York City, on brief), for defendant-appellee.

Before KAUFMAN and KEARSE, Circuit Judges, and MALETZ,* Judge, United States Court of International Trade.

---

*Honorable Herbert N. Maletz, Judge of the United States Court of International Trade, sitting by designation.

KEARSE, Circuit Judge:

Plaintiff-appellant Panama Processes, S.A. ("PPSA") appeals from a judgment of the United States District Court for the Southern District of New York, Charles S. Haight, Jr., Judge, conditionally dismissing on grounds of forum non conveniens PPSA's action seeking damages and injunctive relief for breach of contract and breach of fiduciary duty by defendant Cities Service Company ("Cities"). Because we find no abuse of the district court's discretion, we affirm.

## FACTS

The present lawsuit concerns the conduct since 1965 of the affairs of a Brazilian corporation, Copebras, S.A., 30.31% of whose stock is owned by PPSA, with the remaining 69.69% currently owned by Citco do Brasil Industria a Comercio Ltda. ("Citco do Brasil"), a company owned by two Delaware subsidiaries of Cities. In 1965 Copebras had three shareholders: PPSA, a Cities subsidiary called Columbian Carbon Company ("Columbian") which was subsequently merged into Cities, and Celanese Corporation ("Celanese"). In that year Celanese sought to sell its shares, and the three shareholders agreed that Celanese's interest would be purchased by Copebras, leaving Columbian with 69.69% of the outstanding stock and PPSA with the remainder. PPSA, however, was concerned that Columbian might cause Copebras to reinvest its income rather than paying dividends. As the price of agreeing to Copebras's purchase of the Celanese interest, therefore, PPSA obtained agreement from Columbian in a letter dated September 7, 1965 (the "1965 Agreement"), endorsed by PPSA, stating in part as follows:

In the event Columbian Carbon Company (Columbian) attains a majority position in the stock interest of Companhia Petroquimica Brasileira (Copebras), you as a minority shareholder have expressed your concern as to the dividend policy Columbian would adopt.

It must be recognized that future policy of this kind may be affected by the industrial, fiscal, and political situation in Brazil, and that the corporate objectives and competitive position of Copebras may change from time to time.

It is definitely the intention of Columbian after due consideration of the above factors to cause Copebras to declare dividends, insofar as it may legally do so, to the extent of at least 50% of each year's net income after taxes.[1]

The complaint, filed in 1979,[2] alleges that during the period 1965–1978 Cities breached the 1965 Agreement and breached its fiduciary duty as majority shareholder of Copebras, by employing a variety of "manipulative" accounting devices and expanding the Copebras business in such a way as to benefit Cities while avoiding the payment of dividends to Cities and PPSA. In part, PPSA contends that Cities caused Copebras to adopt an accelerated depreciation accounting method for its Brazilian financial statements, thus lessening Copebras's earnings from which dividends could be paid. PPSA seeks judgment declaring that Cities has breached the 1965 Agreement, awarding monetary damages in an amount equal to the dividends that would have been paid but for the contractual and fiduciary breaches, and enjoining Cities from taking any future action in the conduct of Copebras's affairs to depress Copebras's "true economic earnings or the true value of the shareholders' equity in Copebras and from otherwise preventing the payment of properly computed cumulative dividends."

Cities moved for dismissal of the action on the ground of forum non conveniens,[3] advancing a number of arguments to show that New York is an inappropriate forum. These included the facts that PPSA is a Panamanian corporation with its principal place of business in London, and is not authorized to do business in New York, and that the only present contact of New York with the controversy is the current residence in New York of PPSA's chief executive officer; that Cities is a Delaware corporation whose principal place of business, although in New York until 1974, is currently in Tulsa, Oklahoma; that Cities has in New York just six employees, none of whom has knowledge relevant to this dispute; that Cities has no relevant documents in New York; that Copebras is a Brazilian corporation that does no business in the United States; that Citco do Brasil similar-

---

1. The 1965 Agreement continued as follows:
   Any declaration or omission of dividend will be voted only after full consultation and, if possible, agreement with all minority shareholders.
   Columbian will not cause Copebras or its subsidiaries to undertake any further expansion of its productive capacities beyond what has already been approved as of this date, unless dividends to the extent of at least 50% of each year's net income after taxes, cumulative starting with the calendar year 1964, have been paid, unless such expansion has been approved by Panama Processes and such cumulative dividends have been waived. The provision of this paragraph shall not be applicable to carbon black operations to the extent of $1,500,000 in the event a competitive carbon black plant is not in operation by December 31, 1967.
   At such time when Celanese Corporation of America (Celanese) ceases to have representation on Copebras' Consultative Board, Panama Processes will be permitted to designate one additional individual to have representation on Copebras' Consultative Board. Further, Panama Processes shall have the right at the next stockholders' meeting of Copebras, with the approval of Celanese, to designate one additional individual to have representation on Copebras' Board of Directors.
   Columbian will not transfer its stock in Copebras unless the transferee thereof agrees to assume all the obligations of the transferor under this agreement. The obligations of Columbian under this letter will terminate in the event Panama Processes' interest in Copebras becomes less than 15%.

2. The 1965 Agreement was also the subject of inconclusive litigation here in 1973. See *Panama Processes S.A. v. Cities Service Company*, 362 F.Supp. 735 (S.D.N.Y.1973), *aff'd*, 496 F.2d 533 (2d Cir. 1974).

3. Cities also moved to dismiss under Fed.R. Civ.P. 19 for failure to join an indispensable party, on the ground that since 1973 its former Copebras stock interest has been owned by Citco do Brasil, which has not been made a party here. This question is not involved in the present appeal.

ly neither does business nor is authorized to do business in the United States; that Copebras's books and records are in Brazil and cannot lawfully be removed from Brazil; that those books and records are in the Portuguese language and would have to be translated for an American jury; and that Brazilian law would govern the question of what fiduciary responsibility a majority shareholder such as Citco do Brasil has to a minority shareholder such as PPSA. Finally, Cities argued that there is no genuine issue as to what accounting methods or business operations Copebras undertook, nor as to the fact that Cities controlled Copebras; but Cities would expect to show that economic, industrial, and political conditions in Brazil from 1965 through 1978 were such as to justify, within the contemplation of the 1965 Agreement, any actions taken by Copebras at the behest of Cities. Cities argued that all of these factors, plus the consideration that the injunctive relief sought by PPSA would require continuing judicial supervision over Copebras's operations and fiscal affairs, make it appropriate for the present action to be pursued in Brazil and not in New York. As a condition to dismissal on this ground, Cities offered to submit to the jurisdiction of the courts of Brazil.

PPSA, in opposition to the motion, pointed out, *inter alia*, that the 1965 Agreement and the other agreements leading to Copebras's purchase of Celanese's stock were executed in New York and that Cities had then been headquartered here; that many of the meetings of one of Copebras's governing bodies had been conducted in New York; that the Brazilian courts provide more limited discovery than do United States courts; and that PPSA's claims de-

pend strictly on actions taken by Cities in the United States, not on Copebras's own acts or on conditions in Brazil.[4]

*The District Court's Decision*

In a thorough opinion, reported at 500 F.Supp. 787, the district court reviewed the pertinent principles set forth in the leading forum non conveniens cases, including *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) *("Gilbert"); Alcoa Steamship Company v. M/V Nordic Regent*, 654 F.2d 147 (2d Cir.) (en banc), *cert. denied,* —— U.S. ——, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980) *("Alcoa"); Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) *("Schertenleib");* and *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880 (2d Cir. 1978) *("Farmanfarmaian").* As set forth in greater detail below, the court evaluated the prospects of the parties for a fair adjudication of the claims in the alternative forums, as well as such "public interest" factors as the remoteness of the forum from the center of the controversy, and the ease or difficulty of judicial enforcement of an eventual judgment, and concluded that New York is not, and Brazil is, an appropriate forum for this action.

First, the court recognized that political, industrial, and economic circumstances in Brazil since 1965 will have had an effect on the parties' substantive contractual rights:

Clearly, the reasons underlying the manner of Copebras' accounting, expansion, and dividend policies are important to the resolution of these disputes. It will be recalled that Columbian's undertakings in the September 7, 1965 letter, in respect of dividend policy and plant expansion, were preceded by the *caveat* that the parties must recognize "that future policy of this kind may be affected

---

4. PPSA also argues that the 1965 Agreement was, by agreement, to be enforced in the New York courts, quoting the following language:

The substance, validity, construction, performance and effect of this contract shall be governed by the laws of the State of New York, and any legal proceeding hereunder shall be brought in the courts of the State of New York.

This provision, however, did not appear in the 1965 Agreement. It is to be found only in a

1967 agreement among PPSA, Columbian, and Celanese with regard to the sale of Celanese's stock to Copebras, superseding the original stock sale agreement among the three in 1965, which apparently had not been performed. Even the earlier agreement among the three contained no choice of *forum* clause, but only a provision that the interpretation of that contract was to be governed by New York law.

by the industrial, fiscal, and political situation in Brazil, and that the corporate objectives and competitive position of Copebras may change from time to time." In its present complaint, at ¶ 18, Panama specifically alleges that during the period from 1965 through 1978, "there has been no change in the Brazilian economic, political or fiscal conditions sufficient to justify a failure to declare the cumulative dividends required by the September 7 agreement."

500 F.Supp. at 793. Whether there have been material changes as Cities contends, or no such changes, as PPSA contends, must therefore be determined. *Id.* at 797. Against this Brazilian background, the court observed the need to evaluate the actions and competitive interests of a Brazilian corporation that does business only in Brazil:

> The disputes between Panama and Cities arise directly out of the operations of Copebras. Furthermore, the parties recognized in the September 7, 1965 letter that Cities' future policy obligations in respect of dividends "may be affected by the industrial, fiscal, and political situation in Brazil," as well as changing "corporate objectives and competitive position of Copebras." The letter agreement does not undertake to further define these considerations, or to lay down ground rules for Cities' response to them, other than providing, in the next paragraph of the letter, that the majority stockholder give "due consideration of the above factors"; but it is entirely clear that Brazilian affairs in general, and Copebras' affairs in particular, inform and shape the parties' rights and obligations under the letter agreement.

*Id.* at 795.[5] Most of the proof as to the Brazilian history and political conditions, and of Copebras's own competitive situation would necessarily come from Brazil:

If the case is tried here, it is clear that even assuming the parties' contractual rights are governed by New York law, Brazilian facts and law are inextricably involved. The existence *vel non* of significant developments in the "industrial, fiscal, and political situation in Brazil," upon which Cities' obligations under the September, 1965 agreement are conditional, would require a New York jury to first comprehend and then evaluate the last 14 years of that nation's volatile economic and social history. Comparable complexities of proof arise with respect to "the corporate objectives and competitive position of Copebras" within the Brazilian economy, another circumstance upon which Cities' obligation on dividends is conditional. Proof of these underlying circumstances must come primarily from Brazil.

The ... impact of Cities' decisions upon Copebras, also depends primarily upon Brazilian evidence. The corporate books of account are kept in Portuguese, in accordance with the advice of Brazilian accountants whose practices apparently differ in certain respects from those in this country. Cities' Brazilian attorney states that "under the laws of Brazil it would be unlawful to remove the books of account of Copebras from the country." ... Assuming that this practical problem may be solved by the reproduction and certification of copies, ... the fact remains that a New York jury would be confronted with 14 years of corporate "sonnets from the Portuguese" requiring translation. It is reasonable to assume that many documents ... will be in Portuguese. This is a significant forum non conveniens factor: "More to the point, most of the pertinent documents relevant to the underlying dispute are in French. The expense of translation, which is potentially substantial, would be totally avoided if trial is in Geneva." *Schertenleib, supra,* 589 F.2d at 1165.

---

**5.** The court found these facts to be a significant difference from the situation in *Hoffman v. Goberman,* 420 F.2d 423 (3d Cir. 1970), in which the court of appeals reversed a forum non conveniens dismissal of an action between two United States stockholders of a corporation organized under the laws of the Netherlands Antilles. In *Hoffman,* the court noted that the action did "not involve the policy or management of the corporation," *id.* at 426, and "only collaterally involve[d] the corporation." *Id.* at 427.

Of course, documents in English evidencing Cities' decision-making processes as majority shareholder of Copebras would presumably have to be translated into Portuguese for the benefit of a Brazilian judge; and American witnesses, including Panama's Mr. Michaan, who sat on the Copebras Consultative Board and has access to at least some of those documents, would have to testify in Brazil. But it appears clear that, given the chronological, geographic, economic and social considerations which underlie the disputes between these parties, the bulk of the pertinent evidence is to be found in Brazil.

*Id.* at 797–98.

In addition, the court noted that at least the claim of breach of fiduciary duty would be governed by Brazilian law,[6] the thrust of which differs markedly from United States corporate laws:

> Furthermore, it appears from the 1976 amendments to the Brazilian corporation law that in its definition of a controlling shareholder's responsibilities, an increased emphasis has been placed upon the corporation's "social function," within the context of the "community in which it acts"; a Brazilian corporation is now required to eschew purposes "detrimental to the national interest" or "the national economy." ... These enactments implicate, to a significant degree, the public interest of Brazil in a proper resolution of the ongoing commercial disputes between these parties: an interest resulting from the fact that Copebras is a Brazilian corporation, doing business exclusively within Brazil.

*Id.* at 799.

Finally, and more importantly from the district court's point of view, the court recognized that if it were to grant the injunctive relief requested by PPSA, which includes an injunction against depression of Copebras's "true economic earnings," it would be required to supervise the internal operations of a purely Brazilian corporation, subject to Brazilian law, Brazilian competitive conditions, and Brazilian political and social mores:

> In my judgment, one of the most significant factors is the extent to which this Court's judgment would impact upon, and purport to control, the internal affairs of Copebras, a Brazilian corporation. Cast in Gilbertian terms, this question implicates the enforceability of the court's judgment, the degree of this community's interest in and concern for the litigation, and the difficulties this Court might have in interpreting and applying Brazilian law: all factors to which the Supreme Court referred in *Gilbert.*

> \* \* \* \* \* \*

> [T]he injunctive relief requested by Panama, if granted, would involve this Court in the continued monitoring of the operations of a foreign corporation. ... Panama seeks an order mandating Cities to cause Copebras, a Brazilian corporation, to conduct its internal and fiscal affairs in a manner consistent with Panama's perception of the parties' obligations. In short, this action impacts directly upon the accounting practices, expansion, and dividend policies of a foreign corporation: vital operating concerns.

*Id.* at 793, 795.[7]

The court also considered PPSA's contentions that its chief officer was in New York and that it had its own documents here, and

---

6. We note that, despite PPSA's present arguments that New York law will control this action, its complaint "reserve[d] the right to claim the benefit of the laws of the Republic of Brazil insofar as the provisions of those laws may be applicable to any issue in this action," pursuant to Fed.R.Civ.P. 44.1 which requires that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings . . . ."

7. This concern is consistent with the Supreme Court's observation in *Williams v. Green Bay & Western Railroad Co.,* 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 31 (1946), that

> [t]he relief sought against a foreign corporation may be so extensive or call for such detailed and continuing supervision that the matter could be more efficiently handled nearer home. The limited territorial jurisdic-

the argument that it would be difficult in Brazil to compel Cities' officials to testify as to their acts in causing Copebras to adopt its challenged accounting methods and business practices. The district judge noted that Cities does not deny its control over the affairs of Copebras and concluded that PPSA's *prima facie* case should be provable, if at all, through available documentary evidence and proof of Brazilian conditions.

The court's analysis led it to conclude that New York is an inappropriate forum for the present action. It therefore dismissed the complaint on the conditions that Cities agree (1) to accept service of process in Brazil, (2) to waive any statute of limitations defense that might have arisen since the commencement of the present action, and (3) to pay any judgment that might be rendered against Cities in the Brazilian court. Cities filed its written consent to these conditions, and judgment dismissing the action was entered accordingly. This appeal followed.

## DISCUSSION

■ It is well established that an appellate court should not reverse a district court's dismissal for forum non conveniens unless the dismissal constituted an abuse of discretion. Thus, in *Alcoa Steamship Company v. M/V Nordic Regent, supra,* we stated as follows:

> The Supreme Court in *Gilbert* made it very clear that application of the doctrine of forum non conveniens left a large measure of discretion to the trial judge:
>
> > "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong

as to result in many abuses." 330 U.S. at 508, 67 S.Ct. at 843 (footnote omitted).

> The Court wisely declined to try to define an all-purpose rule. It did set forth the relevant factors to be taken into account. The Court thus necessarily placed heavy reliance on the discretion of the trial judge to balance those factors. Restatement (Second) of Conflict of Laws § 84, Comment b (1971).

654 F.2d at 158. In *Farmanfarmaian, supra,* we described the district court's discretion as "wide" and indicated that it is not to be disturbed absent a " 'clear showing' of abuse." 588 F.2d at 882; *Calavo Growers v. Generali Belgium,* 632 F.2d 963, 965, 966 (2d Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).[8]

■ The factors that should inform the district court's exercise of its discretion include the private interests of the litigants, such as the relative ease of access to sources of evidence, the availability of witnesses, and the enforceability of a judgment if one is obtained. *Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843. They also include such "public interest" factors as the remoteness of the forum from the situs of the pertinent affairs and the forum court's need to apply unfamiliar principles of foreign law. *Id.* at 508–09, 67 S.Ct. at 843–44. The district court recognized that it must consider these and other appropriate factors, and recognized as well that " ' "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." ' " 500 F.Supp. 787, 791, quoting *Alcoa, supra,* which quoted *Gilbert, supra. See Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir. 1981); *Calavo Growers v. Generali Belgium, supra,* 632 F.2d at 969 (Newman, J., concurring).

tion of the federal court might indeed make it difficult for it to make its decree effective. *Id.* at 555–56, 66 S.Ct. at 286–87 (dictum) (footnotes omitted).

8. Although the court's jurisdiction over the present action is based on diversity of citizenship, we need not determine whether, under

*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we must apply New York law, since the federal and New York rules appear to be the same. See *Gilbert, supra,* 330 U.S. at 509, 67 S.Ct. at 843; *Alcoa, supra,* 654 F.2d at 154.

■ As is apparent from our description of its decision, the district court painstakingly evaluated the parties' arguments and factual contentions in light of the appropriate considerations. Our own review, given, on the one hand, the deference due the plaintiff's choice of forum, and on the other, the minimal contacts of the dispute with New York, the heavy involvement and significant interests of the Republic of Brazil, the lack of any United States operations by the corporation whose nonpayment of dividends is at issue, and the possibility that the court would be required to supervise these Brazilian operations on a continuing basis under unfamiliar principles of Brazilian law in a changing Brazilian economic, political, and industrial climate, persuades us that there was no abuse of discretion in the court's determination that New York is not an appropriate forum and its conditional dismissal of the action.

Our recent decision in *Manu International, S.A. v. Avon Products, Inc., supra*, does not require a different conclusion. In *Manu*, the plaintiff sought damages in the Southern District of New York against a New York corporation whose principal offices were in New York, on account of a fraud alleged to have taken place in New York; we reversed the district court's dismissal for forum non conveniens because we found that the court had clearly abused its discretion. The present case differs from *Manu* in several fundamental respects. There are obvious differences in the defendant's domicile, the situs of the tort, and the nature of the relief sought. In addition, in the present case there is at best one witness, PPSA's chief executive officer, who resides in New York; in *Manu* there were several such witnesses. And, perhaps most importantly, in *Manu*, we found that the alternative forum, Taiwan, had no greater interest than New York in how the case was decided, whereas here, the Brazilian courts will have significant economic and political interests at stake. For example, Brazilian exchange control laws restrict the amount of dividends that may lawfully be paid to a foreign shareholder such as PPSA, a factor that gives Brazil an interest in the

amount of any monetary recovery by PPSA. Moreover, Brazil imposes on its corporations a duty to perform a social function. This must impact the corporation's "corporate objectives" and its operations, and thus its ability and responsibility to pay dividends, affecting not only the parties' respective rights and duties under the 1965 Agreement, but also the court's ability to fashion the injunctive relief requested by PPSA.

Finally, we mention in passing that at oral argument of this appeal, PPSA suggested that if the Court were concerned about the problems attendant upon the continuing supervision by a United States court of a Brazilian corporation, we might "deem" the request for injunctive relief withdrawn. This offer was not made to the district court, and we decline to accept it here. We review the district court's exercise of its discretion on the basis of the facts, claims, and contentions that were presented to that court, and not on the basis of new conditions tendered on appeal.

The conditional dismissal for forum non conveniens is affirmed.

MALETZ, Judge, dissenting:

In my view the district court exceeded its discretion in dismissing on the ground of forum non conveniens. Therefore, I respectfully dissent.

At the outset, it will be noted that Cities maintains offices in both New York City and Tulsa, with its main office in Tulsa. Significantly, Cities' motion for dismissal did not urge Tulsa as the more convenient forum. Instead, Cities seeks to defend this action away from both its home city, Tulsa, and its home country, the United States. Indeed, the heart of Cities' argument is that the relevant witnesses, the pertinent evidence and the applicable law are all Brazilian and that this action should therefore be tried in Brazil. In short, Cities makes no claim that Tulsa is a more convenient forum than New York City; on the contrary, it insists that Brazil is more appropriate than any forum in the United States.

Therefore, any difference in convenience between Tulsa and New York City is of no relevance here. Rather the analysis must turn on the suitability of a United States forum as compared to a Brazilian forum and not on the suitability of a New York City forum as compared to a Brazilian forum.

Of course, whether this action should be dismissed on the ground of forum non conveniens is a question to be answered by weighing the "private interest[s] of the litigant[s]" and the "factors of public interest." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. See also, e. g., *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 151 (2d Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 248, 66 L.Ed.2d 116. This same strong showing is required even though plaintiff PPSA is a foreign corporation. *Id.* at 866, 872.

## I

This case does not present a typical forum non conveniens dispute where all that need be decided is which party should bear the inconvenience of travelling to the other's home forum. What is involved here is whether Cities should be allowed at its behest to litigate this case in a Brazilian forum where it will enjoy significant procedural advantages. Specifically, the record shows that no discovery would be available to PPSA in Brazil. See Joint Appendix (hereafter "App.") 121–2, 173. Added to that, Cities was successful in obtaining a stay of discovery in the court below.[1] Hence, dismissal here brings to an end any possible discovery by PPSA. And absent discovery PPSA will be under a marked handicap in attempting to prove the corporate misconduct it alleges.

Moreover, in Brazil the officers, directors and agents of a corporate litigant usually cannot testify. App. 121, 174. This means that in all likelihood PPSA could not offer testimony of either its or Cities' officers or employees. Nor is process available in Brazil to readily compel the production of documentary evidence at trial. App. 174. Coupled with the absence of discovery, these characteristics of Brazilian law would materially prejudice PPSA's claim.

To be sure, all judicial systems do not have to mirror our own; indeed, it may be appropriate in a given case to dismiss an action so that it may be refiled in a convenient forum, albeit one dissimilar to our own. See, e. g., *Alcoa* at ——, n.16. But given the circumstances of this case, the procedures mandated by Brazilian law provide Cities with a distinct advantage. Such advantage should not be lightly disregarded for the doctrine of forum non conveniens exists not only to promote the "easy, expeditious and inexpensive" decision of cases, *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843, but also to serve as an "instrument of justice," *Williams v. Green Bay & W.R. Co.*, 326 U.S. 549, 554, 66 S.Ct. 284, 286, 90 L.Ed. 31 (1946), protecting the right of litigants to "a fair trial." *Gilbert* at 508, 67 S.Ct. at 843. Thus, it is not enough for Cities to show that it would be cheaper and more convenient for it to try the case in Brazil; it must show that it would be so inconvenienced by defending in the United States as to render it fair and just that PPSA be subjected to the procedural handicaps of a Brazilian forum.

## II

It is in this setting that the respective advantages and disadvantages of a Brazilian forum vis-a-vis a United States forum must be weighed. In accordance with the *Gilbert* factors, I consider first the private interests of the litigants starting with the location of the witnesses. As to this, PPSA

---

1. Although in the Southern District of New York forum non conveniens motions are often decided on affidavits, *Alcoa* at 158, extensive discovery on such motions has been permitted in complex cases. See *Farmanfarmaian v. Gulf Oil Corp.*, 437 F.Supp. 910, 924–5 (S.D.N.Y. 1977), *aff'd*, 588 F.2d 880 (2d Cir. 1978). Such discovery would have better enabled the court to determine whether Cities' forum non conveniens allegations had a valid basis.

alleges that Cities has so controlled and manipulated Copebras as to deny PPSA dividends to which it is entitled. The management decisions complained of were made in the United States by Cities' executives who determined Copebras' policies, including its investment and expansion strategy, dividend policy and accounting practices. The decisions of Cities' executives were implemented by Cities' representatives who constituted the controlling majority on a Consultative Board which managed Copebras. App. 8. All these executives and representatives of Cities are United States citizens and residents who speak English and whose attendance at trial would obviously be facilitated by a United States forum. App. 100. Further, from 1965 to 1979, the Consultative Board held 58 of its 74 meetings in the United States. App. 100. This in itself is strong evidence that a United States trial would not unduly burden Cities' executives and representatives.

Cities stresses, however, that its defense will include testimony of Brazilian witnesses as to Brazilian accounting practices and the general condition of the Brazilian economy. But this alone scarcely requires trial in Brazil. The United States executives of Cities are the primary actors here and it is they as well as Cities' representatives on the Consultative Board who must explain what they did and why they did it. And Cities has submitted no witness list nor otherwise identified the names of potential Brazilian witnesses or indicated the relevance of their testimony.

It is almost a truism "that litigants generally manage to try their cases with fewer witnesses than they predict in such motions as this." *Gilbert* at 511, 67 S.Ct. at 844. For that reason, this Circuit has required parties seeking transfer of an action under 28 U.S.C. § 1404(a) on account of the convenience of witnesses to "clearly specify the key witnesses to be called and ... [to] make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). See also *Jenkins v. Wilson Freight Forwarding Co.*, 104

F.Supp. 422, 424 (S.D.N.Y.1952). Such specificity is also favored by other Circuits. See *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973); *Chicago R.I. & Pac. R. Co. v. Hugh Breeding, Inc.*, 232 F.2d 584, 588 (10th Cir. 1956), *cert. dismissed*, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957); *Headrick v. Atchison, T. & S.F. Ry.*, 182 F.2d 305, 310–11 (10th Cir. 1950). Here all we have is Cities' unsubstantiated allegation that it will call witnesses relating to Brazilian accounting practices and the Brazilian economy.

Nor is there anything in the record to justify the assumption that the number of Brazilian witnesses will even approach, let alone exceed, the number of American witnesses, or that the cost of transporting these witnesses would exceed the cost of transporting Cities' executives to Brazil and keeping them away from their positions during trial. *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 66 (2d Cir. 1981). In short, Cities has not shown that its burden of bringing witnesses to New York from Brazil would be any greater than defendant's burden was in *Manu* where this Court found that the transportation of witnesses from Taiwan to New York did not impose an unacceptable inconvenience.

But even if Cities were to show, as it has not, that it had a significant number of Brazilian witnesses, that consideration alone would not be decisive. In *Manu,* this Court endorsed the "recent sentiment in this Circuit for evaluating the *forum non conveniens* factors in light of the increased speed and ease of travel and communication which makes, especially when a key issue is the location of witnesses, no forum as inconvenient today as it was in 1947." *Id.* at 65. Here, where the amount in controversy is estimated at $10,000,000, it is not realistic to expect that the burdens of travel are likely to impede Cities in presenting its case.

Considering next the availability of documentary evidence, in view of the fact that Copebras was managed by Cities from the

United States, the necessary inference, which is unrebutted here, is that the records of Cities' management decisions are in the United States and are in English. Moreover, to the extent that the records of Copebras are relevant, Cities maintains in the United States, already translated into English, a partial second set of Copebras' financial records. App. 227. Cities argues, however, that the minutes of Copebras' Board of Directors are in Portuguese. While that may be true, PPSA maintains, and Cities has not shown otherwise, that the Copebras Board of Directors functioned largely as a rubber stamp for the Consultative Board. And Cities does not deny that the Consultative Board's records are in English.

In any event, assuming that some Brazilian documents are relevant, we are faced with a situation where documents may be found in both the United States and Brazil. Those in Brazil are in Portuguese and those in the United States are in English and one set or the other will require translation, copying and shipment. No doubt transfer of documents from Brazil to the United States may be expensive, but "[i]t will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit." *Manu* at 65. Here, Cities has failed to show why both the lawsuit *and* the United States documents should be transferred to Brazil as opposed to the transfer to New York of only the Brazilian documents.

Other private factors relevant here are the residence of the parties and their expectation as to where litigation might take place. See *Alcoa* at 159. As for the residence of the parties, this case presents the "somewhat unusual fact that it is the forum resident who seeks dismissal." *Schertenleib v. Traum*, 589 F.2d 1156, 1164 (2d Cir. 1978). And "[a]lthough the residence of the parties is no longer considered dispositive in *forum non conveniens* cases, it remains a significant factor." *Manu* at 67. "[P]laintiff chose this forum and defendant resides here. This weighs heavily against dismissal." *Schertenleib* at 1164. What this Court said in *Manu* at 67 is applicable:

It would be odd if not unfair to force the plaintiff, a Belgian who chose this forum, to go to Taiwan at the behest of Avon, who has its own home office right in this forum, when most of the actors involved in the case are not located in Taiwan but in or closer to New York.

With regard to the expectation of the parties as to where litigation might take place, the 1965 Agreement was negotiated, drafted and executed in New York City. None of the parties signing the document was Brazilian and the Agreement contains no provision indicating that it was to be enforced in the courts of Brazil. It thus would appear that the parties expected the Agreement to be enforceable in the United States.

### III

We turn next to the public factors outlined in *Gilbert*. Cities emphasizes that questions of Brazilian corporation law are present in this case. But the mere fact that a case presents issues of foreign law "is not a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case properly before it." *Williams v. Green Bay & W. R. Co.*, 326 U.S. at 553, 66 S.Ct. 284, 286, 90 L.Ed. 31. Furthermore, New York contract law is also involved. For the record shows that pursuant to the Civil Code of Brazil, the liability of a defendant in a contract action is governed by the law of the place where the contract was entered into. App. 175. Thus, foreign law is implicated whether this case is tried in New York or in Brazil.

Cities also argues that this case will present issues of Brazilian accounting. But there is no reason to believe that Brazilian accounting practices are more difficult to comprehend than American accounting practices which juries in this country are routinely called upon to understand. And in all probability a jury—which PPSA has sought—would be no more familiar with American as opposed to Brazilian accounting practices. Moreover, American accounting practices are equally involved in this case. This is because Cities keeps two

sets of books: one in accordance with Brazilian accounting practices which are kept in Brazil and one in accordance with American accounting procedures which are kept in the United States. PPSA claims that the books kept in the United States more accurately reflect Copebras' profits upon which dividends are to be based. Hence, trial of the suit in Brazil will require a Brazilian court to examine Cities' American books and to master American accounting practices. Accordingly, foreign accounting practices will be involved irrespective of where the case is tried.

On a further aspect, the 1965 Agreement provides that "future [dividend] policy may be affected by the industrial, fiscal and political situation in Brazil .... " Relying on this provision, Cities sets out a potpourri of factors which it claims would be more easily understood by a Brazilian court than an American court. Among the factors so set out are the dramatic growth in the Brazilian economy since 1965; the high Brazilian inflation; the fiscal means adopted by the Brazilian government and Brazilian businesses to deal with it; the military seizure of the government; the tripling of the gross national product from 1963 to 1977; the increase in industrial production by 221%; and the increase in population by 48%. With all this, however, Cities has failed to explain how these factors have any bearing on Copebras' failure to pay dividends. All that is before the court are bare allegations that these factors are relevant—a claim all too easy to make whenever a case involves a foreign corporation. Such unsubstantiated allegations made willy-nilly do not support remitting a plaintiff to a far away forum. And even if it were to be assumed that one or more of these factors has any relevance, the very fact that Cities' executives based first in New York and then in Tulsa managed Copebras demonstrates that one does not have to be in Brazil to comprehend the relevant events.

Cities further argues that under Brazilian exchange control laws, dividends above a limited amount paid to a foreign shareholder may not be taken from Brazil except upon payment of a tax. However, Brazil's tax interests may readily be accommodated here. For example, the district court could limit any recovery by PPSA against Cities to the net amount after Brazilian taxes that PPSA would have received had the dividends been paid in Brazil. The balance would remain with Cities and Copebras subject to Brazil's collection of the appropriate tax. Alternatively, the district court could award damages equal to the pre-tax amount of dividends on the condition that PPSA post a bond in Brazil to insure that Brazil could be certain of collecting its taxes. Thus, Brazil's tax interest is hardly an insurmountable problem.

Essentially this is a dispute about dividend policy between two non-Brazilian shareholders of a Brazilian corporation. It is not a case which "touch[es] the affairs of many persons [in Brazil where] there is reason for holding the trial in their view." Gilbert at 509, 67 S.Ct. at 843. No doubt there is "a local interest in having localized controversies decided at home," id. at 509, 67 S.Ct. at 843, but it has not been shown that this controversy is "localized" in Brazil.

It may be that in this case the trial court would need to hear evidence and decide issues concerning the internal affairs of a foreign corporation. "But a federal court which undertakes to decide such ... question[s] does not trespass on a forbidden domain." Williams, 326 U.S. at 553, 66 S.Ct. at 286. "There is no rule of law ... which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation." Koster v. Lumbermens Mutual Co., 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). The fact that this case may involve "complicated affairs of a foreign corporation is not alone a sufficient reason for a federal court to decline to decide it." Williams at 556–57, 66 S.Ct. at 287–288.

The majority stresses that PPSA has sought an injunction and suggests that the requested relief would involve interferences with the affairs of a foreign corporation.

Not surprisingly PPSA proceeded in customary fashion and requested all forms of relief: damages, declaratory and injunctive relief. But if PPSA's expressed willingness to abandon its request for injunctive relief counts for anything at all, it is an indication that sufficient relief may be afforded even in the absence of an injunction. Indeed, as Cities itself points out in its brief here [br. 19], "the decision on damages would in all likelihood . . . dictate the future . . . dividend . . . policies of Copebras." Thus, this dispute appears resolvable without an injunction. And even if an injunction were necessary, this would not compel dismissal. What was stated in *Williams* at 556–57, 66 S.Ct. at 287–288 bears repetition:

> The fact that the claim involves complicated affairs of a foreign corporation is not alone a sufficient reason for a federal court to decline to decide it. *The same may be true even where an injunction is sought.* [Emphasis added.]

This case might be different if Cities had shown that resolution of the controversy *required* injunctive relief and that such relief could not be enforced by a United States court. Cities has not made such a showing but apparently assumes that these conclusions follow from the mere fact the Copebras is a Brazilian corporation. These conclusions are somewhat less than self-evident when it is considered that this is a dispute between two shareholders, neither of whom is Brazilian and that any injunction would apply to Cities rather than Copebras. Furthermore, the issuance of an injunction rests in the sound discretion of the trial court. Should that court determine that an injunction would be unenforceable, it could decline to provide such relief. And if PPSA wishes to maintain a suit in Cities' home forum, knowing that the Brazilian aspects of this case may result in the denial of injunctive relief, it should be permitted to run that risk.

## IV

In summary, I believe that the district court exceeded its discretion in granting Cities' motion to dismiss. As for the private factors, the inconvenience to Cities of a trial in New York is exceeded by the inconvenience to PPSA of a trial in Brazil. Moreover, Cities is domiciled in the United States and its directors, executives, offices and records are in the United States. Thus, if this action were to proceed in the United States, Cities would enjoy all the substantial advantages which usually accompany litigation in one's home forum. See, e. g., *Koster v. Lumbermens Mutual Co.*, 330 U.S. at 529, 67 S.Ct. at 834. On the other hand, trial in Brazil would subject PPSA to a forum which has procedural features singularly ill-suited to the fair presentation of its case. Here, as in *Manu* at 67:

> It is almost a perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name of expediency, to a forum in which, realistically, it will be unable to bring suit when the defendant would not be genuinely prejudiced by having to defend at home in the plaintiff's chosen forum.

With regard to the public factors, substantial questions of foreign law will be present no matter where this case is tried. And this case is not localized in Brazil. On the contrary, since Cities orchestrated the challenged conduct from its offices in the United States, "the substance of the controversy . . . not only touches other locales besides . . . [Brazil], but has a particular nexus with the . . . [United States]." *Manu* at 66. Further, as noted earlier, it has not been shown that injunctive relief will necessarily be required in order to do justice between the parties.

In a case such as this, having such drastic consequences for PPSA, particular care must be taken to insure that the allegations of Cities reflect the presence of genuine and substantial facts demonstrating actual inconvenience to it and not merely its reliance upon the doctrine of forum non conveniens to obtain a tactical advantage. Healthy skepticism is in order where, as here, a defendant seeks to have a cause tried away from both its home city and country.

In the last analysis, the forum non conveniens doctrine was designed to prevent

plaintiffs from burdening defendants by the choice of unsuitable forums. As the Supreme Court said in *Gilbert* at 507, 67 S.Ct. at 842, the open court house door,

> may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

While the doctrine of forum non conveniens permits the courts to prevent such abuse, its misapplication can work the very evils it was designed to prevent. Defendants are not less subject to the "temptation [to force trial] at a most inconvenient place for an adversary." And a court misled into concluding that a lawsuit is best tried elsewhere may in fact relegate a plaintiff to as harassing and vexatious a forum as any a defendant was ever subjected to. Because I believe that is what happened here, I respectfully dissent.